Carl Lee THOMPSON, Plaintiff–
Appellant,

v.

Tim PARKES, et al., Defendants,

Remington Industries, Inc.,
Defendant–Appellee.

No. 91–5921.

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1992.

Decided May 8, 1992.

Rehearing and Rehearing En Banc
Denied June 25, 1992.

Andy D. Lewis (argued and briefed), Garner, Lewis, Cates & Prickett, Chattanooga, Tenn., for plaintiff-appellant.

Robert Divine (argued and briefed), Miller & Martin, Chattanooga, Tenn., William P. Biddle, III, Higgins, Biddle & Chester, Athens, Tenn., for defendant-appellee.

Before: JONES and NORRIS, Circuit Judges; and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

In this case, the court is asked to address the question of when a district court is empowered to declare a jury advisory.

## I.

In 1986, Carl Lee Thompson, Tim Parkes, and Mark Mourier agreed to enter into a venture to manufacture automobile floormats in Tennessee. Each contributed approximately equal capital, and received a third of the shares of the resulting corporation, Remington Industries, Inc. (Remington). Thompson, the only one of the three resident in Tennessee, and who had some carpet-industry experience in that state, was placed in charge of setting up the factory, and establishing a clientele.

Apparently unsatisfied with Thompson's performance, Parkes came to Tennessee to take charge of the venture in the spring of 1987. After the corporation was refused a loan on the ground of Thompson's past criminal conviction for wire fraud, the parties entered into a "private label agreement" with Thompson. The agreement provided that Parkes and Mourier would purchase Thompson's interest in Remington, although Thompson had the option to repurchase the shares until September 1, 1987. Although resigning his office with Remington, Thompson was given the right to sell Remington floormats on a private-label basis, under the name "Auto–Mat Specialties." The agreement provided both that Thompson could purchase auto mats

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

on a discounted basis, and that Thompson would receive commissions on sales made for Remington. The agreement further provided that if the contract were breached, Remington would cease to sell Auto–Mat Specialties accounts unless a commission was paid.

Although the private-label agreement expressly stated that Thompson would thereafter act independently of Remington, it appears that Thompson functioned as a salesman in the several months that the parties amicably performed under the agreement. Thompson was advanced "draws" against future commissions, and occupied a desk at Remington.

Thompson contacted a buyer for Wal–Mart Stores in late summer 1987, and made a presentation to the buyer on Remington's behalf. Remington's bookkeeper testified that she knew of Thompson's contacts with the Wal–Mart buyer, and that Thompson, while keeping her informed of developments, had asked her to let him be the one to inform Parkes. Thompson pursued the relationship by telephone, and at last the Wal–Mart buyer expressed an interest in purchasing Remington floormats. At this juncture, however, Thompson was "fired" by Parkes, despite his plea that he had "got Wal–Mart." Thompson's draws had apparently been exceeding his commissions for some time prior to the discharge.

After Thompson departed, the Wal–Mart buyer called Remington's offices attempting to reach him. Upon being informed by the bookkeeper that the caller was Wal–Mart's buyer, Parkes took the call, and Remington subsequently began to supply floormats to Wal–Mart.

Thompson filed suit against Remington, and Parkes and Mourier, on February 4, 1988, on several theories. The complaint included a demand for trial by jury, appropriately directed to all theories, to which no objection was raised by defendants, and the matter was entered on the jury trial docket. On May 30, 1990, the final pretrial order was approved in form and substance by all parties and entered by order of a magistrate judge. The order stated, "This case is set for trial before the U.S. District Judge and a six-person jury at 9 AM on the 28th day of June 1990." Subsequently, on May 21, 1991, the district court entered an order stating, "The trial date is RESCHEDULED to commence at 1:00 p.m. on Thursday, May 23, 1991, before the United States District Judge and a six-person jury...." Again on May 22, 1991, the parties agreed and the court ordered in a "REVISED FINAL PRETRIAL ORDER" that "This case is set for trial before the U.S. District Judge and a six-person jury...." In each final pretrial order the court gave direction to the lawyers about jury instructions. There is nothing in any of these documents or in the pleadings to suggest that the parties or the court had drawn a distinction among the claims regarding the role of the jury, nor that the stipulation and orders regarding the jury trial applied to less than all of the claims in the case.

On the morning set for trial, the district court dismissed the individual defendants and several of plaintiff's claims at a pretrial conference, leaving claims against Remington for breach of contract and unjust enrichment. In an ensuing, lengthy discussion the district court raised the issue of whether plaintiff was required to elect between the two remaining causes of action, indicating that difficulties had arisen in drafting the jury instructions. Plaintiff's counsel stated that if necessary plaintiff would, under protest, proceed in unjust enrichment. The following exchange then took place:

[DEFENDANT'S COUNSEL]: But if you proceed on the equitable theory the jury in Tennessee, it wouldn't be binding here, just an advisory body?

[PLAINTIFF'S COUNSEL]: This Federal Court does not operate under any [Tennessee] advisory rules.

THE COURT: Well, yeah, we have advisory juries under the Federal rules. There is a provision under the Federal rules for advisory verdicts, and I do it all the time, and what I could do is submit it to the jury and then if I consider it later on to be inequitable I could consider an advisory verdict and probably have to give an opinion of some kind in this case

anyway, as it turns out, anyway. Whatever.

After further discussion concerning whether or not the plaintiff was required to elect, the district court decided against forcing plaintiff to choose between the two remaining causes of action.

The case was then tried to the jury. The verdict form contained four interrogatories. Under the heading "PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT," the jury was asked whether the defendant had breached the contract with plaintiff, and the amount of damages. Under the heading, "UNJUST ENRICHMENT," the jury was asked whether the defendant had repudiated the contract with plaintiff and, again, the amount of damages. The verdict form also contained a note that stated "If you find that the plaintiff is entitled to recover any amount as sales commissions, he may recover that amount as damages for breach of contract or as unjust enrichment, but not both."

The jury found both that defendant had breached the contract, and that defendant had repudiated the contract. The jury awarded $310,000 as damages for unjust enrichment, the approximate amount sought by plaintiff at trial on both theories (arguing that the amount of commissions due under the contract was equivalent to the "reasonable" measure of damages appropriate to unjust enrichment). The interrogatory concerning damages for breach of contract was left blank.

Upon being handed the verdict form, and before the verdict was read into the record, the district court called a sidebar and expressed confusion, despite the note on the verdict form, as to what to "do with" the verdict. Plaintiff's counsel offered to waive the issue of breach of contract, stating that he would "take the three-ten and go home." The district court then obtained the assurances of both counsel that they would waive any complaint as to the breach of contract claim. Finally, the court instructed the courtroom deputy to read into the record only the two interrogatories finding the defendant unjustly enriched and awarding damages on that claim.

One week after the verdict was returned, the district court issued a memorandum opinion which stated, for the first time, that the jury had been advisory. Relying upon Tennessee law, the district court concluded that there had been no right to a jury trial on unjust enrichment. The court made findings of fact, concluded that there was no basis for finding the defendant unjustly enriched, and dismissed the action.

Plaintiff then brought this appeal arguing that the district court erred in relying upon Tennessee law in determining plaintiff's right to a jury trial and that plaintiff had a right to a jury trial under federal law; that the district court erred in declaring the jury's role an advisory one after the fact; and that the district court's memorandum opinion was flawed in various respects. We believe that the district court erred, and that the action of the district court should be reversed and the jury's verdict reinstated.

## II.

The dispositive issue presented by this appeal is the validity of the district court's decision to treat the verdict as advisory. We therefore do not reach the assignment of error relating to the district court's factual findings contrary to those of the jury.

Federal Rule of Civil Procedure 39 provides:

(a) **By Jury.** When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

(b) **By the Court.** Issues not demanded for trial by jury as provided in Rule 38

shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

**(c) Advisory Jury and Trial by Consent.** In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

█  Federal Rule of Civil Procedure 39(c) contains two directives. The first is that actions not triable of right may be tried, on motion or at the court's initiative, to an advisory jury. This directive implies notice to the parties. The order must be based on a motion by the parties or on the court's own motion. Clearly the rule requires that the court's initiative in ordering a trial to an advisory jury must occur, and the parties be made aware of it, before the case is submitted. That did not occur in this case. Only a passing reference was made in connection with a discussion on election of remedies. The court's initiative here occurred after the verdict. The other directive of Rule 39(c) permits the court, with the consent of the parties, to "order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right." In this case, the parties agreed and the court ordered on several occasions that the matter be tried as a jury case. No mention was made of an advisory jury during trial preparation. In such a case, whether or not the issues were equitable in nature, the verdict of the jury must be treated as if the right had existed and it is beyond the power of the district court to set the verdict aside on the theory it was advisory.

This court has addressed the parameters of the use of advisory juries pursuant to Rule 39 in *Hildebrand v. Board of Trustees*, 607 F.2d 705 (6th Cir.1979), which supports our conclusions here.[1] In *Hildebrand*, a professor's action against a state university for unconstitutional discharge was tried to a jury. After both parties had rested, the trial court raised the issue of the plaintiff's entitlement to a jury trial, and announced that the jury's findings would be only advisory. Although the jury's subsequent answers to interrogatories favored reinstatement of the plaintiff, the district court issued a decision for the defendant.

This court reversed, in reliance upon "considerations of fundamental fairness and judicial economy," stating:

> Any good trial lawyer will testify that there are significant tactical differences in presenting and arguing a case to a jury as opposed to a judge. To convert a trial from a jury trial to a bench trial (or vice-versa) in the middle of the proceedings is to interfere with counsel's presentation of their case and, quite possibly, to prejudice one side or the other. Further, it is a waste of the additional time and money which is inherent to a jury trial.

*Id.* at 710. The court noted a probable right to a jury trial, but held in the alternative:

> Even if we were to adopt the district court's view, we would have to reverse. In this case *both* sides requested a jury trial. Neither side ever moved to strike the jury demands. Indeed, neither side ever moved for a directed verdict. Since both parties apparently wanted the jury to decide this case and since the jury had heard both sides' presentation, the district judge's conduct in *sua sponte* tak-

---

1. *Hildebrand* was not raised in the briefs. Plaintiff's counsel was apparently unaware of the decision, but defense counsel attempted to distinguish the case when raised by the court at oral argument. We remind defense counsel of the ethical obligation to "disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Model Rules of Professional Conduct Rule 3.3 (1990); *accord*, Model Code of Professional Responsibility EC 7–23 (1981).

ing the case away from the jury is particularly difficult to understand.

Even if the court was correct that no jury trial right existed in this case, F.R.Civ.Pro. Rule 39(c) permits both sides to stipulate to a jury trial. To be sure, a district court does not have to go along with the stipulation, but once that occurs, it does not have unbridled discretion to change its mind. In *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150 (10th Cir.1965), the district court approved a jury trial stipulation, but on the eve of trial, vacated the stipulation on its own motion on the ground that the parties had no right to a jury. The Court of Appeals found an abuse of discretion. Assuming that the district court in this case had the authority to abort the jury's decision-making role, we would find an abuse of discretion in the exercise of that authority.

*Id.* at 710–11 (footnote omitted). *Hildebrand* was relied upon by the Court of Appeals for the Third Circuit in *Bereda v. Pickering Creek Industrial Park, Inc.*, 865 F.2d 49 (3d Cir.1989), a case similar to the present one in that the district court elected to treat the jury's verdict as advisory after it was returned. The court of appeals noted that there was no jury trial right as to several of plaintiff's claims. However, the court found that the case should be regarded as tried to the jury by consent pursuant to Rule 39(c), noting that a contrary holding under circumstances such as the present would mean that "[a]ll jury verdicts in cases not triable by right by a jury would effectively be advisory...." *Bereda*, 865 F.2d at 52.

■ The reasoning of these cases makes clear that the district court erred in determining that the verdict would be advisory after the case was submitted to the jury. The parties are entitled to know prior to trial whether the jury or the court will be the trier of fact. *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir.1981). This conclusion follows from the language of Rule 39(c), which permits the district court to try a case "with an advisory jury," not to have the case tried by a jury and essentially exercise a veto power. The term "with an advisory jury" implies a jury known to the parties to be merely advisory at the time of trial (and, for the sake of efficiency, sufficiently in advance of trial that counsel may prepare a case appropriate to the trier of fact).

Defendant argues that the pretrial conference colloquy set out above in the statement of facts represents a statement of intent on the district court's part to impanel an advisory jury. We disagree with defendant as to the significance to be given this exchange. Plaintiff's counsel had stated immediately beforehand that if forced to elect between the remaining causes of action, he would pursue unjust enrichment. The quoted statements were clearly premised on that possibility. Having given his last word on the subject of an advisory jury ("Whatever."), the court immediately returned to the unresolved question, inquiring of plaintiff's counsel, "What do you say about this contract and unjust enrichment theories?" At the conclusion of the discussion, the district court decided against forcing plaintiff to make an election. The conversation regarding advisory juries became irrelevant when that decision was made, since the circumstance upon which the discussion had been founded did not eventuate.

Defendant also argues that he objected to plaintiff's jury demand, by virtue of defense counsel's having stated, "[I]f you proceed on the equitable theory the jury ... wouldn't be binding here ...?" Again, it is clear that this *question* was premised on a situation which did not arise.

Defendant's argument, if sustained, would deprive the pretrial orders in this case of the force given them under the Rules. Defendant twice stipulated to a jury trial in pretrial orders entered in this case. Federal Rule of Civil Procedure 16(e) provides that a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." No such subsequent order was ever entered, verbally or otherwise, altering the jury trial stipulation. This court in *Hildebrand* cited with approval *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150 (10th Cir.1965), in

890

which a district court decided "on the eve of trial" that the parties would not be allowed to try the case to a jury. In finding an abuse of discretion in that case, the Tenth Circuit similarly relied upon the fact that the parties had agreed to try the case to a jury, and that the district court had entered an order to that effect.

In light of our holding that Rule 39(c) does not allow the trial court to transform a jury verdict into an advisory finding after the verdict is returned, we need not address the right to a jury trial, although we note that it is hornbook law that the determination is controlled by federal precedents. *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

The proper course under these circumstances is to direct that judgment be entered based upon the jury's verdict. In *Hildebrand*, we did not take this course because the district court had found at the conclusion of the evidence that a directed verdict would have been in order, and because the jury was informed prior to deliberations that its verdict would be advisory only. Here, the district court denied defendant's motion for a directed verdict, indicating that the court was of the opinion that there was a material issue of fact as to every element of each claim. Moreover, the district court's decision to treat the jury as advisory was not made until after trial, and the jury returned its verdict upon due deliberation, and cognizant of its role as the final arbiter of the dispute. It is therefore appropriate to give effect to that verdict. Fed.R.Civ.P. 39(c).

REVERSED, with direction to enter judgment for the plaintiff in accordance with the jury's verdict.