**MEREX A.G.; Merex Corporation and Peter C. Lachmann, Plaintiffs–Appellants,**

v.

**FAIRCHILD WESTON SYSTEMS, INC., Defendant–Appellee.**

No. 1817, Docket 93–9286.

United States Court of Appeals, Second Circuit.

Argued June 14, 1993.

Decided July 14, 1994.

822

Daniel J. O'Callaghan, New York City, for plaintiffs-appellants.

Roy A. Klein, Old Bethpage, NY, for defendant-appellee.

Before: McLAUGHLIN and JACOBS, Circuit Judges, and WEINSTEIN, Senior District Judge.*

McLAUGHLIN, Circuit Judge:

Merex A.G. ("Merex") appeals from a judgment entered in the United States District Court for the Southern District of New York (Mary Johnson Lowe, *Judge*) dismissing its complaint seeking damages under an oral commission agreement. Merex argues, among other things, that the district court abused its discretion by declaring the jury verdict on its promissory estoppel claim advisory only, under Federal Rule 39(c), and by waiting until Merex rested its case before announcing this ruling.

We hold that the Seventh Amendment did not guarantee Merex the right to a jury trial on its promissory estoppel claim. We also hold that the district court acted within its discretion when it declared the jury advisory. Accordingly, we affirm.

## BACKGROUND

In the early 1980s, defendant Fairchild Weston Systems, Inc. ("Fairchild") planned to sell several multi-million dollar military surveillance systems to the Peoples' Republic of China (the "PRC"). Lacking the necessary Asian connections, Fairchild engaged Merex, a German brokerage company, to introduce Fairchild to representatives of the PRC and to broker the sale. The dispute now centers on how Fairchild was to compensate Merex for its middleman services.

* Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of New York, sitting by designation.

Merex initially offered to work for a commission, calculated as a percentage of the sale price. According to Merex's president, Gerhard Mertins, a representative of Fairchild orally promised Mertins in the summer of 1982 that Fairchild would pay Merex an eight-percent (8%) commission on Fairchild's direct sale to the PRC.

Merex's proposed commission arrangement was not acceptable to Fairchild's executives, however; apparently, they were reluctant to deal directly with the PRC. Fairchild insisted that the parties structure the deal in a sale/resale format so that Fairchild would sell five systems to Merex, and Merex would then resell the systems (as Fairchild's exclusive distributor) to the PRC. Merex would thus assume the risk of collecting payment from the PRC, and would be compensated by charging the PRC a mark-up on the resale.

Negotiations among the three parties under this sale/resale format broke down in April, 1984. Shortly thereafter, Fairchild renewed the negotiations with the PRC—without Merex. Five months later, despite its earlier misgivings about dealing with the PRC, Fairchild consummated a direct sale to the PRC of two surveillance systems. The deal, of course, did not include Merex. When Fairchild refused to pay Merex for its prior services, Merex sued Fairchild in the district court, alleging an oral promise by Fairchild to pay Merex a commission on any direct sale to the PRC. Merex's complaint sought damages under theories of breach of contract, quantum meruit, and promissory estoppel. The complaint also sought a declaration of Merex's rights under the alleged commission agreement. Merex demanded a jury trial on all issues.

The jury trial began on April 13, 1992. Following Merex's case-in-chief, Judge Lowe granted, in part, Fairchild's motion for judgment as a matter of law. See Fed.R.Civ.P. 50(a). Judge Lowe found that, without a writing, both Merex's claims for breach of contract and quantum meruit were barred by New York's Statute of Frauds. See *Merex A.G. v. Fairchild Weston Systems, Inc.*, 810 F.Supp. 1356 (S.D.N.Y.1993). Judge Lowe also dismissed Merex's claim for a declaratory judgment, and no issue is made of this.

Characterizing the remaining promissory estoppel claim as "equitable," Judge Lowe then ruled that she would let it go to the jury, but only for an advisory verdict. Fed.R.Civ.P. 39(c). *Merex*, 810 F.Supp. at 1358 n. 2.

After Fairchild completed its case, the case went to the advisory jury, which returned a verdict in favor of Merex on the promissory estoppel claim. Judge Lowe rejected the jury's advice, however. After issuing findings of fact and conclusions of law, see Fed. R.Civ.P. 52(a), the court entered judgment for Fairchild, dismissing Merex's complaint.

Merex now appeals.

## DISCUSSION

Merex raises a host of arguments on appeal; we find only one worthy of serious consideration.

Merex challenges the district court's decision to treat the verdict on its promissory estoppel claim as merely advisory. Merex believes that promissory estoppel is a legal claim, not an equitable one, and argues that the Seventh Amendment guaranteed Merex a jury trial on that issue. Alternatively, Merex argues that even if Merex was not entitled to a jury trial as a matter of right, the district court nevertheless abused its discretion under Rule 39(c) by waiting until mid-way through trial before telling the parties that the verdict would not be binding. We address these arguments in turn.

### I. *The Seventh Amendment and Promissory Estoppel*

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. As Justice Story explained for the Supreme Court in 1830, the phrase "suits at common law" is not limited to "suits, which the common law recognized among its old and settled proceedings"; rather, the phrase embraces all "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447,

7 L.Ed. 732 (1830). Thus, "it has long been settled that the right [to a jury trial] extends beyond the common-law forms of action recognized" at the time the Seventh Amendment was adopted in 1791. *Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974) (Seventh Amendment entitled plaintiff to jury trial in suit for violation of Title VIII of the Civil Rights Act of 1968).

To decide whether the Seventh Amendment's right to a jury trial extends to a cause of action born subsequent to the Amendment's adoption, we apply a twofold, historical analysis: "The standard test is to determine first whether the action would have been deemed legal or equitable in 18th century England, and second whether the remedy sought is legal or equitable in nature. The court must balance the two, giving greater weight to the latter." *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir.1993). *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989); *Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987).

### A. The Nature of the Right

Although "promissory estoppel" *per se* was unknown to the courts of 18th-century England, *see* John D. Calamari & Joseph M. Perillo, *Contracts* § 6–1, at 272 (3d ed. 1987), its modern uses have historical antecedents in both law and equity.

■ The modern doctrine of promissory estoppel may be invoked in two situations. First, and most traditionally, the doctrine allows for the enforcement of a promise in the absence of bargained-for consideration. *See Restatement (Second) of Contracts* § 90 (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."); *see, e.g., Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir.1977). This is known as the theory of detrimental reliance.

Promissory estoppel has also become increasingly available to provide relief to a party where the contract is rendered unenforceable by operation of the Statute of Frauds. *See Restatement (Second) of Contracts* § 139(1) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise."); *see, e.g., Philo Smith & Co., v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir.1977) (per curiam); *see generally* Jeffrey G. Steinberg, Note, *Promissory Estoppel as a Means of Defeating the Statute of Frauds*, 44 Fordham L.Rev. 114 (1975).

Precedent for the rule that detrimental reliance may render a gratuitous promise enforceable can be found in "the decisions of the courts of common law from the very beginnings of the action for assumpsit." 1A Arthur L. Corbin, *Corbin on Contracts* § 194, at 193 (1963). *See* Ames, *The History of Assumpsit*, 2 Harv.L.Rev. 1, 14 (1888) ("a detriment has always been deemed a valid consideration for a promise if incurred at the promisor's request"); *Restatement (Second) of Contracts* § 90 cmt. a ("enforcement of informal contracts in the action of assumpsit rested historically on justifiable reliance on a promise"); *see generally* Calamari & Perillo § 6–2, at 277; *see, e.g., Coggs v. Bernard*, 92 Eng.Rep. 107 (K.B. 1703). This would suggest a legal root for the doctrine.

■ On the other hand, as its surname suggests, the doctrine of promissory estoppel is a direct descendent of equitable estoppel. *See* Calamari & Perillo § 6–2, at 274, 281; 1 Samuel Williston, *Williston on Contracts* § 140, at 607–09 (3d ed. 1957). Although equitable estoppel was ultimately recognized by the courts of common law, the doctrine was first fashioned in the courts of equity. *See* 2 Fred F. Lawrence, *Equity Jurisprudence* § 1046, at 1132 (1929) ("Jurisdiction of equity courts to prevent fraud by the use of estoppel is a 'very old head of equity.'") (citation omitted). The most obvious precedents in equity for promissory estoppel were those cases in which the Statute of Frauds precluded enforcement of an oral promise to convey land. It was well established that the

Chancellor could grant specific performance of such a contract where the promisee spent money and made improvements to the land in reliance on the oral promise. *See* Joseph Story, *Commentaries on Equity Jurisprudence* § 1054 (14th Edition 1918); Lawrence, *supra*, § 799, at 888–89; *see generally* Benjamin F. Boyer, *Promissory Estoppel: Principle From Precedents: I,* 50 Mich.L.Rev. 639, 655 (1952).

■ Thus, the protean doctrine of "promissory estoppel" eludes classification as either entirely legal or entirely equitable, and the historical evidence is equivocal. It is clear, however, that both law and equity exert gravitational pulls on the doctrine, and its application in any particular case depends on the context in which it appears. For example, where a plaintiff sues for contract damages and uses detrimental reliance as a substitute for consideration, the analogy to actions in assumpsit (law) is compelling. By contrast, when the plaintiff uses promissory estoppel to avoid a draconian application of the Statute of Frauds, the pull of equity becomes irresistible.

■ We believe Merex's invocation of the doctrine more closely resembles the latter than the former. In this case, the alleged commission agreement was certainly supported by adequate consideration, and, consequently, there is no need to rely on notions of detrimental reliance. Merex is seeking to use promissory estoppel to circumvent New York's Statute of Frauds. When promissory estoppel is utilized in this manner, the claim is more equitable than promissory in nature. *See, e.g., Esquire Radio & Elec., Inc. v. Montgomery Ward & Co.,* 804 F.2d 787, 794 (2d Cir.1986) ("having reneged on its promise to repurchase Esquire's spare parts inventories ... Ward is equitably estopped from raising the Statute of Frauds").

### B. *The Nature of the Remedy*

In its prayer for relief, Merex requested $1,680,000 on its promissory estoppel claim, a sum representing eight percent of the sale price of the two surveillance systems Fairchild sold to the PRC. Thus, Merex sought to recover expectation damages under the alleged oral commission agreement. Because expectation damages for breach of contract are traditionally legal in nature, the pull of law with its attendant right to a jury trial is distinctly felt. *See Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 459, 97 S.Ct. 1261, 1271, 51 L.Ed.2d 464 (1977) ("suits for damages for breach of contract, for example, were suits at common law"); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.").

■ A claim for money damages, of course, constitutes "legal" relief, for such relief was "the traditional form of relief offered in the courts of law." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 570, 110 S.Ct. 1339, 1347, 108 L.Ed.2d 519 (1990) (quoting *Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009). But this is not always true. *Id.* Restitution damages, for example, and money awarded incidental to the grant of equitable relief are not legal in nature. *Id.* at 570, 110 S.Ct. at 1347–48. Furthermore, money damages may constitute equitable relief where "the court is not awarding damages to which the plaintiff is legally entitled but is exercising the chancellor's discretion to prevent unjust enrichment." *SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 95 (2d Cir.1978) (Friendly, J.) (disgorgement of profits is equitable).

In this case, Merex's equitable theory of liability collides with its claim for legal relief. Specifically, Merex falls back upon the doctrine of promissory estoppel because the Statute of Frauds renders the oral commission agreement unenforceable; Merex believes that to apply the Statute would work a fraud in this case. "Relief in cases within [the Statute of Frauds], therefore, as in all others of this nature, is not predicated upon enforcing the contract in the teeth of the statute, but preventing its use to defeat this ulterior equity.... This use of one of equity's favorite weapons, estoppel, to prevent this particular injustice is well established." Lawrence, *supra,* § 786, at 876.

■ In short, plaintiff's reach exceeds its grasp by invoking an equitable theory

(estoppel) to give it the legal relief (expectation damages) that is denied to it by the Statute of Frauds. This it may not do. To invoke the power that equity possesses to trump the Statute of Frauds, plaintiff must demonstrate "unconscionable" injury, *i.e.,* injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement. *See Philo Smith,* 554 F.2d at 36. If successful, the plaintiff is not entitled, as of right, to expectation damages; the court retains the discretion to award relief to avoid "injustice," and can mold that relief "as justice requires." *Restatement (Second) of Contracts* § 139; *see, e.g., Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir.1989) ("Prevailing on a promissory estoppel claim, however, sometimes entitles a party only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages."); *see generally* Mary E. Becker, *Promissory Estoppel Damages,* 16 Hofstra L.Rev. 131, 147–48 (1987) (observing that there is a "strong case" for awarding restitution relief instead of contract damages where the Statute of Frauds renders the contract unenforceable: "If full expectation damages (or specific performance) were available once there had been reliance, there would be little left of the statutory bar.").

Thus, while we recognize the legal nature of expectation damages generally, we remain unpersuaded that Merex's prayer for money damages outweighs the undeniably equitable nature of the promissory estoppel claim as a whole, particularly where, as here, the measure of damages plaintiff seeks is inappropriate. Accordingly, we hold that Merex's claim is properly regarded as equitable rather than legal and, consequently, that Merex was not entitled to a jury trial on its claim for promissory estoppel. This accords with the weight of authority. *See Nimrod Mktg. (Overseas) Ltd. v. Texas Energy Inv. Corp.,* 769 F.2d 1076, 1080 (5th Cir.1985) ("Promissory estoppel is an equitable form of action in which equitable rights alone are recognized. Defendants had no right to trial by jury....") (citations omitted), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986); *C & K Eng'g Contractors v. Amber Steel Co.,* 23 Cal.3d 1, 151 Cal.Rptr. 323, 328, 587 P.2d 1136, 1141 (1978) ("We conclude that the trial court properly treated [promissory estoppel] as equitable in nature, to be tried by the court with or without an advisory jury as the court elected.").

## II. *Abuse of Discretion under Rule 39(c)*

Relying exclusively on out-of-circuit authority, Merex alternatively argues that, even if it was not entitled to a jury trial, the trial court committed reversible error by declaring the jury advisory *after* the trial had actually started. We do not read Rule 39(c), or the cases relied upon by Merex, to compel such a conclusion.

Rule 39(c) provides that "[i]n all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury...." After the breach of contract, quantum meruit and declaratory judgment claims were dismissed, the only claim surviving in the case was not "triable of right by a jury." The court "of its own initiative" had the right to try the remaining issue with an advisory jury. Indeed, absent the consent of the parties, it would be highly questionable for a court to submit an equitable issue to an advisory jury for a binding verdict. *See Mallory v. Citizens Utilities Co.,* 342 F.2d 796, 797–98 (2d Cir. 1965) (error to enter judgment upon advisory jury's verdict in equitable action for rescission of contract; court must make independent findings of fact and conclusions of law).

Merex cites *Thompson v. Parkes,* 963 F.2d 885 (6th Cir.1992), *Bereda v. Pickering Creek Industrial Park, Inc.,* 865 F.2d 49 (3d Cir. 1989), and *AMF Tuboscope, Inc. v. Cunningham,* 352 F.2d 150 (10th Cir.1965), for the proposition that a trial court abuses its discretion whenever it declares the jury advisory after the start of trial. Although there are dicta in each case arguably supporting such a broad rule of law, the reasoning of these decisions does not suggest a similar result in this case.

The Sixth Circuit's decision in *Thompson,* for example, is starkly different from our case. There, the trial court declared the jury advisory one week after the jury had re-

turned its verdict. *See Thompson*, 963 F.2d at 887. Reversing, the court proffered at least three reasons why waiting that long constituted an abuse of discretion in that case.

First, the court reasoned that to sanction the practice would permit judges to exercise "veto power" over jury verdicts with which they disagree. *Id.* at 889. Second, the court observed that Rule 39(c) permits the parties to stipulate to a jury trial even if the claims were not triable as of right by a jury. (In that case, both sides had requested a jury trial, and neither side had moved to strike the jury demand or for a directed verdict. *Id.*) Finally, the court believed that fundamental fairness and judicial economy required notice of an advisory jury in advance of trial, so that counsel "may prepare a case appropriate to the trier of fact." *Id.* at 889; *see also Hildebrand v. Board of Trustees*, 607 F.2d 705, 710 (6th Cir.1979) ("Any good trial lawyer will testify that there are significant tactical differences in presenting and arguing a case to a jury as opposed to a judge."). While we agree that the foregoing considerations should inform the trial court's discretion under Rule 39(c), we do not believe Judge Lowe committed reversible error on the facts of this case.

First, and most significantly, Judge Lowe did not wait until the verdict was returned before deciding that the verdict would be advisory. Accordingly, there was no danger that the trial judge would veto the jury's verdict. *Cf. Thompson*, 963 F.2d at 888 (court declared jury advisory after verdict); *Bereda*, 865 F.2d at 50 (same).[1]

▮ Nor do we read Rule 39(c)'s provision for "trial by consent" to mandate the court's acceptance of the jury's verdict in this case. Rule 39(c) provides that the court, "with the consent of both parties, *may* order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right." Fed.R.Civ.P. 39(c) (empha-

sis added). Thus, when both parties consent, Rule 39(c) invests the trial court with the discretion—but not the duty—to submit an equitable claim to the jury for a binding verdict. While the litigants are free to request a jury trial on an equitable claim, they cannot impose such a trial on an unwilling court. *See* 5 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶ 39.11 (2d ed. 1993) ("Thus in private litigation the court *and* the parties can agree to try equitable actions to a jury whose verdict will have the effect of a common law verdict.") (emphasis in original). Accordingly, even if we were to accept Merex's argument that Fairchild consented to Merex's demand for a jury trial of its promissory estoppel claim, such consent would *not* divest the trial judge of her discretion to decide the equitable issue.

▮ Finally, although Rule 39(c) does not expressly require advance notice to the parties of the court's intention to treat the jury as advisory, we agree that such notice is preferable. In the absence of an express statutory mandate, however, we are not inclined to reverse on this basis alone, at least absent some demonstrable prejudice to the complaining party. Given the minimal strictures of federal pleading, it will sometimes not be clear until well into the trial whether an issue is equitable or legal.

Accordingly, we hold that the district court did not abuse its discretion by declaring the jury advisory after the plaintiff rested its case.

## CONCLUSION

We have carefully considered all of Merex's many remaining arguments and find them meritless. The judgment is affirmed.

---

1. We recognize that the trial judge in *AMF Tuboscope* declared the jury advisory "on the eve of trial." 352 F.2d at 155. We note, however, that before reaching the Rule 39(c) issue, the Tenth Circuit had held that the parties were entitled to a jury trial as a matter of right. *See* 352 F.2d at

153. Hence, the trial judge in that case had *no* discretion to declare the jury advisory. *See* 352 F.2d at 155 ("We are of the opinion that the Chief Judge abused his discretion, *if discretion he had under the existing circumstances,* in denying a jury trial.") (emphasis added).