# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2829

_____

InCompass IT, Inc.; HLI, L.L.C.

*Plaintiffs - Appellants*

v.

XO Communications Services, Inc.; XO Communications, L.L.C.

*Defendants - Appellees*

_____

No. 12-2868

_____

InCompass IT, Inc.; HLI, L.L.C.

*Plaintiffs - Appellees*

v.

XO Communications Services, Inc.; XO Communications, L.L.C.

*Defendants - Appellants*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2013
Filed: June 26, 2013
_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

InCompass IT, Inc. and HLI, LLC (collectively, "InCompass") filed suit against XO Communications Services, Inc. and XO Communications, LLC (collectively "XO"), asserting a single claim of promissory estoppel based on a former XO employee's alleged oral promise to enter into a multi-year lease with InCompass. Following a bench trial, the district court[1] entered judgment in XO's favor. On appeal, InCompass asserts that the district court erred in granting XO's motion to strike InCompass's jury trial demand. We affirm the district court's grant of XO's motion to strike InCompass's jury trial demand.[2]

## I. *Background*

This promissory-estoppel action arises from "XO's then-General Manager John Unger['s] verbal[ ] agree[ment] to sign a triple-net 20–25 year lease for approximately 20,000 square feet (including the construction of a 5,000 square foot addition) at a rate

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

[2]XO cross-appeals, arguing that the district court erred in denying its motion for summary judgment and motion under Federal Rule of Civil Procedure 52(c) for judgment on partial findings at the close of InCompass's case-in-chief. Because we affirm the district court's grant of XO's motion to strike InCompass's jury trial demand, we necessarily deny as moot the relief XO seeks in its conditional cross-appeal.

of $22 per square foot." *InCompass, IT, Inc. v. XO Commc'ns Servs., Inc.*, Civil No. 10-3864 (SRN/JJG), 2012 WL 512401, at *1 (D. Minn. Feb. 15, 2012) (unpublished).

In its first amended complaint, InCompass alleged that it was "looking to relocate its office space." In turn, Unger informed Tim Lambrecht, InCompass CEO and HLI co-owner, that XO needed additional space. "On learning that XO[ ] was looking to buy or rent a building for expansion purposes, Lambrecht told Unger that he had already looked at a 20,000-square-foot building at 300 2nd Street NW in New Brighton that would meet XO['s] needs but had ruled it out as being too large and too expensive for InCompass alone . . . ." Unger then suggested "that XO[ ] could rent data center space in such a building." "Unger and Lambrecht discussed XO['s] data center requirements such as where the building should be located within the Twin Cities and environs and how big the building should be." Then,

> [o]n June 9, 2006, HLI entered into an agreement to purchase the 300 2nd Street NW building for $1,600,000 with the knowledge that the purchase agreement contained an out-clause called the "condition date" of August 8, 2006, which permitted HLI to back out of the purchase agreement for any reason and get a full refund of its $20,000 escrowed down payment.

Over a week later, on June 19, 2006, Unger, Lambrecht, and HLI co-owner Joseph Hanson toured the building. Then, on July 27, 2006, after touring three other buildings, "Unger told Lambrecht and Hanson that the previously-toured 300 2nd Street NW building was the best bet."

The complaint then alleged that Unger agreed to lease 25,000 square feet of HLI's building for a period of 25 years. The alleged agreement included provisions for substantial renovation of a portion of the structure and assurances that the agreement would be put in written form before the end of the year. According to InCompass, XO

-3-

never followed through on Unger's alleged oral promise; as a result, InCompass filed the instant suit for promissory estoppel, alleging that

> 37. XO[ ] made a clear and definite promise to rent data center space in the 300 2nd Street NW building prior to its purchase by HLI and, for all practical purposes, InCompass.

> 38. It was reasonably foreseeable to XO[ ] that HLI and InCompass would rely on XO['s] promise.

> 39. In making that promise, XO[ ] intended to induce HLI and InCompass to rely on that promise and proceed to purchase the 300 2nd Street NW building.

> 40. In reliance on XO['s] promise, HLI and InCompass purchased and guaranteed the purchase of the 300 2nd Street NW building even though InCompass' business required a building of only about 4,000 square feet and either costing about $500,000 or renting for about $5,500 per month.

> 41. As a direct and proximate result of their reliance on XO['s] promise, HLI and InCompass suffered and continue to suffer severe damages well in excess of $75,000.

In response, XO "assert[ed] that the statute of frauds bars the alleged oral agreement because, under Minnesota law, contracts that are for a lease of more than one year must be in writing." *InCompass IT, Inc.*, 2012 WL 512401, at *1. It is undisputed that the "alleged lease agreement was never reduced to a finalized writing." *Id.*

In its complaint, InCompass "demand[ed] a jury trial on all issues in this case which are triable to a jury." XO moved to strike InCompass's jury trial demand, "argu[ing] that because [Incompass] [was] using promissory estoppel to avoid application of the statute of frauds, [its] claim sound[ed] in equity." *InCompass IT,*

*Inc.*, 2012 WL 512401, at *1. Therefore, XO asserted that InCompass "ha[d] no right to a jury trial in this action." *Id*. In response, InCompass claimed that it was "not using promissory estoppel to avoid application of the statute of frauds." *Id*. Instead, InCompass argued that its "promissory estoppel claim is a matter of detrimental reliance, calling for a legal remedy, for which [it] ha[s] a right to a trial by jury." *Id*.

The district court granted XO's motion to strike InCompass's jury trial demand. First, the court found that the Minnesota statute of frauds applied because "to the extent that there was a lease agreement between [InCompass] and [XO], it should have been reduced to writing, consistent with Minnesota law." *Id*. at *4. The court then followed the "general principle that a promissory estoppel claim used to avoid the statute of frauds sounds in equity." *Id*. (citing *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821 (2d Cir. 1994); *Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, No. 98 Civ.861 RWS, 99 Civ.3687 RWS, 2003 WL 1345136 (S.D.N.Y. Mar. 19, 2003) (unpublished); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2316 (3d ed. 2008)).

Second, the court considered the type of remedy that InCompass sought. *See id*. "Without ruling on the type of damages that [could] be available to [InCompass] at trial," the court determined that "the essence of [InCompass's] damages are for expenses incurred in reliance on the alleged promise made by Mr. Unger." *Id*. at *5. The court concluded that "these reliance damages place the promissory estoppel claim in the province of equity" and that InCompass was "not using the theory of promissory estoppel to salvage an agreement lacking in adequate consideration, which would . . . sound in law." *Id*. Therefore, the court held that InCompass's promissory-estoppel claim sounded in equity, and, as a result, InCompass had no Seventh Amendment right to a jury trial.

## II. *Discussion*

On appeal, InCompass argues that review "of the nature of the right and remedy sought" demonstrates that its promissory-estoppel claim "is in the nature of law, not equity." According to InCompass, "[t]he initial agreement between the parties was not the 25[-]year lease agreement itself, but [InCompass's] purchase of a certain building in the first instance, upon the promise of XO['s] . . . delivery of the lease agreement as consideration." InCompass contends that it is using promissory estoppel as an independent claim for detrimental reliance, not to avoid the statute of frauds. InCompass also maintains that it is seeking expectation damages, which are "legal in nature."

> The Seventh Amendment preserves, "[i]n Suits at common law, . . . the right of trial by jury." U.S. Const. amend. VII. The Supreme Court has established a two-prong test for determining whether a party enforcing a statutory right is entitled to a jury trial under the Seventh Amendment. *Tull v. United States*, 481 U.S. 412, 417–18, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987). First, we must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* (citations omitted). The Supreme Court has stressed the second inquiry of this test is the more important of the two. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990).

*Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005).

Under Minnesota law, "[p]romissory estoppel is an equitable doctrine that 'impl[ies] a contract in law where none exists in fact.'" *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (second alteration in original) (quoting *Grouse v. Grp. Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981)). But "the right to a jury trial in the federal courts is to be determined as a matter of federal law in

-6-

diversity as well as other actions." *Simler v. Conner*, 372 U.S. 221, 222 (1963). "[T]he characterization of [a] state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law." *Id*. Thus, for Seventh Amendment purposes, a promissory-estoppel claim may be considered equitable or legal, depending on the context:

> The doctrine of promissory estoppel can be classified as legal or equitable depending on the context in which it appears. If promissory estoppel is being used to avoid the statute of frauds, for example, the claim should be considered equitable. If the claim for relief is money damages, however, the remedy is legal in nature and the right to a trial by jury must be preserved.

Wright & Miller, *supra* (citing *Merex*, 29 F.3d 821; *Geneva*, 2003 WL 1345136; *Roberts v. Karimi*, 204 F. Supp. 2d 523 (E.D.N.Y. 2002)).

Thus, to determine whether InCompass is entitled to a jury trial, we must determine whether its promissory-estoppel claim sounds in law or equity by examining the nature of the right and the remedy sought. *See Merex*, 29 F.3d at 824–26.

## A. *Nature of the Right*

Promissory estoppel has a dual nature that historically gives it both equitable and legal features. If the claim is for relief traditionally found at law, such as contract damages, then the availability of a trial by jury would seem to be at its zenith. On the other hand, if the claim is to provide relief unavailable at law, then the claim clearly sounds in equity, and the right to jury trial is at its nadir. The history and significance of this duality is discussed extensively in *Merex*. *Id.* at 824–25.

In the present case, InCompass maintains that its promissory-estoppel claim sounds in law, contending:

The facts of the underlying action involve two oral agreements. The first involves a contract between HLI and XO Communications regarding HLI's purchase of the 2nd Street building. In simple terms, HLI offered to purchase the building if XO leased up to 25,000 square feet starting at $21 per square foot, and XO Communications accepted the offer. The oral lease agreement was the consideration.

The second agreement was the long-term lease agreement itself. The district court mistakenly believed the underlying lease agreement was the basis of the InCompass claim for promissory estoppel. But the claim for promissory estoppel in the InCompass First-Amended Complaint reflects the loss of its consideration from XO Communications in the first agreement noted above where InCompass was induced to purchase the 2nd Street building . . . .

But we conclude that a plain reading of InCompass's complaint demonstrates that its promissory-estoppel claim sounds in equity, not law. Contrary to InCompass's contention, it is not "su[ing]for contract damages and us[ing] detrimental reliance as a substitute for consideration." *See Merex*, 29 F.3d at 825. As XO correctly observes, InCompass "do[es] not allege that XO made a unilateral, gratuitous promise that must be enforced. Rather, [it] allege[s] an exchange of promises: [InCompass] promised to buy the Property in exchange for XO's alleged promise to lease space there." Paragraph 24 of InCompass's complaint specifically alleges that XO promised to lease the building at issue for 25 years. Under Minnesota's statute of frauds, a long-term lease agreement must be in writing. *See* Minn. Stat. § 513.05.[3]

---

[3]Section 513.05 provides:

Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made, or by the party's lawful agent thereunto authorized in writing; and no such contract, when made by an agent,

Neither party disputes that the lease agreement *was not* in writing; therefore, given the contract's subject matter, the district court correctly concluded that the statute of frauds was implicated. The doctrine of promissory estoppel "may . . . function to take an agreement outside of the statute of frauds." *Hovey v. Rooney*, No. A07-0917, 2008 WL 933529, at *5 (Minn. Ct. App. Apr. 8, 2008) (unpublished) (citing *Norwest Bank Minn., N.A. v. Midwestern Mach. Co.*, 481 N.W.2d 875, 880 (Minn. Ct. App. 1992)). Because InCompass is using promissory estoppel to avoid the statute of frauds, the claim is equitable in nature. *See Merex*, 29 F.3d at 825 ("Merex is seeking to use promissory estoppel to circumvent New York's Statute of Frauds. When promissory estoppel is utilized in this manner, the claim is more equitable than promissory in nature.").

Having concluded that the nature of InCompass's promissory-estoppel claim is equitable in nature, we next address the nature of the remedy. *See id*.

## B. *Nature of the Remedy*

As explained *supra*, the nature of the remedy sought is "the more important of the two" inquiries in determining whether a right to a jury trial exists under the Seventh Amendment. *Taylor*, 403 F.3d at 968; *see also Geneva*, 2003 WL 1345136, at *4 ("[I]t is the second prong—the type of remedy sought—that is most important in determining whether a right to jury trial should obtain.").

> A claim for money damages . . . constitutes "legal" relief, for such relief was "the traditional form of relief offered in the courts of law." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570, 110 S. Ct. 1339, 1347, 108 L. Ed. 2d 519 (1990) (quoting *Curtis* [*v. Loether*], 415 U.S. [189,] 196, 94 S. Ct. [1005,] 1009 [(1974)]). But this is not always true. *Id*. Restitution damages, for example, and money

---

shall be entitled to record unless the authority of such agent be also recorded.

awarded incidental to the grant of equitable relief are not legal in nature. *Id.* at 570, 110 S. Ct. at 1347–48. Furthermore, money damages may constitute equitable relief where "the court is not awarding damages to which the plaintiff is legally entitled but is exercising the chancellor's discretion to prevent unjust enrichment." *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) (Friendly, J.) (disgorgement of profits is equitable).

*Merex*, 29 F.3d at 825. Additionally, money "damages . . . to be awarded for [a plaintiff's] reliance . . . are equitable in nature." *Geneva*, 2003 WL 1345136, at *4.

By contrast, "[b]ecause expectation damages for breach of contract are traditionally legal in nature, the pull of law with its attendant right to a jury trial is distinctly felt." *Merex*, 29 F.3d at 825 (citing *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 459 (1977) ("[S]uits for damages for breach of contract, for example, were suits at common law . . . ."); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.")).

Here, InCompass is seeking money damages. But it has been, at best, imprecise on the measure of those damages. In its complaint, InCompass alleged that it had "suffered and continue[d] to suffer severe damages well in excess of $75,000." In its prayer for relief, it asked the court to award it, among other things, "such other and further relief as the court may deem just and equitable." Thus, the complaint does not specify a measure of damages. But, as the district court recognized, InCompass's interrogatory answers state that its "damages claims are based on, *inter alia*, the difference between the contemplated monthly rent and [InCompass's] mortgage, taxes and utility payment, as well as any decline in the market value of the building at issue." *InCompass IT, Inc.*, 2012 WL 512401, at *4. These damages appear to be reliance damages, which "reimburse losses arising from a party's change in its position

-10-

in reliance on a contract." *Logan v. Norwest Bank Minn., N.A.*, 603 N.W.2d 659, 663 (Minn. Ct. App. 1999). "In determining reliance damages, a court attempts to place the non-breaching party in the position it would be in had the contract not been made." *Id*. Reliance damages "are equitable in nature." *Geneva*, 2003 WL 1345136, at *5.

By contrast, InCompass's "expert report shows that [InCompass] apparently seek[s] some element of expectation damages." *InCompass IT, Inc.*, 2012 WL 512401, at *4. That is, InCompass claims to seek the amount of rental income it would have received from XO had XO actually made an enforceable promise to lease the building at issue.

Like the district court, we need not definitively determine "the type of damages that [might have been] available to [InCompass] at trial." *Id*. at *5. Because the subject contract clearly comes within the statute of frauds, InCompass seeks to avoid its operation through the equitable application of promissory estoppel. InCompass "falls back upon the doctrine of promissory estoppel because the Statute of Frauds renders the [purported] oral . . . agreement unenforceable." *Merex*, 29 F.3d at 825. InCompass is asking the court to apply promissory estoppel as a legal remedy to form a contract and establish its damage, while at the same time asserting that the promissory-estoppel doctrine applies equitably to remove the same contract from the operation of the statute of frauds. We decline to do so.

> "Relief in cases within [the Statute of Frauds], therefore, as in all others of this nature, is not predicated upon enforcing the contract in the teeth of the statute, but preventing its use to defeat this ulterior equity. . . . This use of one of equity's favorite weapons, estoppel, to prevent this particular injustice is well established." [Fred F.] Lawrence, [*Equity Jurisprudence*] § 786, at 876 [(1929)].

> In short, [InCompass's] reach exceeds its grasp by invoking an equitable theory (estoppel) to give it the legal relief (expectation damages) that is denied to it by the Statute of Frauds. This it may not do.

To invoke the power that equity possesses to trump the Statute of Frauds, [InCompass] must demonstrate "unconscionable" injury, *i.e.*, injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement. *See Philo Smith* [*& Co., v. USLIFE Corp.*], 554 F.2d [34,] 36 [(2d Cir. 1977) (per curiam)]. *If successful, [InCompass] is not entitled, as of right, to expectation damages; the court retains the discretion to award relief to avoid "injustice," and can mold that relief "as justice requires."* Restatement (Second) of Contracts § 139; *see, e.g.*, *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) . . . .

*Id.* at 825–26 (emphasis added) (first and second alterations in original).

In light of InCompass's inconsistency as to the precise measure of damages that it seeks, and in light of the "undeniably equitable nature of the promissory estoppel claim as a whole, . . . . we hold that [InCompass's] claim is properly regarded as equitable rather than legal and, consequently, that [InCompass] was not entitled to a jury trial on its claim for promissory estoppel." *See id.* at 826; *see also Geneva*, 2003 WL 1345136, at *5 ("Given the 'protean' nature of promissory estoppel (and the confusing variances in potential claims that may be considered 'promissory estoppel') and the equitable remedy sought here in the form of reliance damages, the cause of action is more equitable than legal and a right to jury trial does not attach.").

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____