400 So.2d 718 (1981)
Richard Craig DOTY, Plaintiff-Appellee,
v.
SAFECO INSURANCE COMPANY et al., Defendants-Appellants.
No. 8206.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
Rehearing Denied July 8, 1981.
*719 Adams & Reese, Edward Markle, New Orleans, Franklin, Moore & Walsh, James E. Moore, Baton Rouge, for defendant-appellant.
Davidson, Meaux, Sonnier & Roy, L. Lane Roy, Voorhies & Labbe, E. Gregory Voorhies, Lafayette, Lewis & Lewis, James C. Lopez, Opelousas, for defendants-appellees.
Shelby E. Bohannon, Alexandria, Knoll & Knoll, Clark C. Roy, Marksville, Michael J. Johnson, Cottonport, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and LABORDE, JJ.
*720 DOMENGEAUX, Judge.
This case, and the two companion cases which follow,[1] arose from an intersectional automobile collision which occurred on March 24, 1979, at about 3:30 A.M. Todd Theriot, then 17, drove his eastbound 1977 Ford pickup truck from the Percy Bourque Road onto Louisiana Highway 167 between Lafayette and Maurice. Jennifer Chaudoir was driving her boyfriend's Camaro Z-28 in a southerly direction on Highway 167 when Theriot pulled in front of her unexpectedly. Miss Chaudoir had no time to apply her brakes or to otherwise avoid slamming into the left or driver's side of Theriot's truck at a speed of 45 to 55 miles per hour.
Miss Chaudoir and her two rear seat passengers, Tammy Deshotel and Richard Doty, were seriously injured in the accident; her sister Pamela Sue Chaudoir, the front seat passenger, was fatally injured. Although the Camaro struck the driver's side of the truck, Theriot escaped injury because the Camaro struck the bed of the truck rather than the cab.
In the instant case, Richard Doty sued Todd Theriot; Joseph Theriot, who was Todd's father and the owner of the truck; Safeco Insurance Company (Safeco), the automobile insurer of the truck; Bituminous Casualty Company (Bituminous), the comprehensive general liability (CGL) insurer of Joseph Theriot, d/b/a Ti-Joe's Welding Service; Countryside Casualty, Inc. (Countryside), the automobile liability insurer of the Camaro; and MFA Mutual Insurance Company (MFA), Doty's uninsured/underinsured motorist liability insurer, for the personal injuries and medical expenses he sustained as a result of the accident.
In # 8207, in which a separate decision will be rendered on the issue of damages, Billy and Iona Chaudoir sued Mr. and Mrs. Joseph Theriot; Safeco; Bituminous; and Countryside for the wrongful death of their minor daughter, Pamela Sue. Also in that suit, Jennifer Chaudoir sued the same defendants for her personal injuries and medical expenses.
In # 8208, also in which a separate decision will be rendered on the issue of damages, Tammy Deshotel sued Safeco; Countryside; Jennifer Chaudoir, the driver of the Camaro; Bituminous; and Trinity Insurance Company, Miss Deshotel's uninsured/underinsured motorist liability insurer, for her personal injuries and medical expenses.
Prior to trial, Billy and Iona Chaudoir, Jennifer Chaudoir, and Tammy Deshotel released Safeco and the Theriots for a total of $15,000.00. Under the terms of its policy, Safeco's liability was limited to $20,000.00 per accident.
A trial on the merits of these cases was conducted on June 18, 1980. On August 12, 1980, the trial court rendered its reasons for judgment. Therein, the court found that the accident was caused solely by the negligence of Todd Theriot. In accordance with this finding, the court rendered judgment in favor of Richard Doty against Todd Theriot and James Theriot for $22,646.61. Recovery against Safeco was limited to $5,000.00 of this amount, the remainder of its $20,000.00 liability limits. Bituminous was held liable for the balance of $17,646.61. Judgment was also rendered in favor of the Chaudoir and Deshotel plaintiffs against Bituminous for a total of $85,646.43, well within the Bituminous policy limits. All other claims were dismissed. Judgment in this case was signed on August 21, 1980. Judgment in the companion suits was signed September 25, 1980. From these judgments Bituminous has appealed, on the ground that coverage did not exist. The Theriots have appealed the finding that Todd Theriot was negligent and also argue that the award to Richard Doty is excessive.

NEGLIGENCE
It is undisputed that Todd Theriot was on an inferior roadway when he drove unexpectedly into the path of the vehicle with the right of way. Jennifer Chaudoir, *721 the driver of the right-of-way vehicle, testified that she was traveling at or below the speed limit when the accident occurred. The Theriot truck appeared so suddenly in her path that she had no time to apply her brakes. Hence, her speed could not be estimated from skid marks because there were none.
The Theriots argue that the heavy damage inflicted upon their pickup truck suggests that Miss Chaudoir was speeding. The trial court rejected this argument and so do we. The Theriots offer no proof that a Camaro traveling at 45-55 miles per hour could not have caused such damage. There is simply no evidence to support the Theriots' argument that Miss Chaudoir, rather than Todd Theriot, was negligent.

DID COVERAGE EXIST?
The most important issue common to all three cases, but which will be discussed in this case only, is whether the Theriot pickup truck involved in the accident was covered by the Bituminous insurance policy issued to Joseph Theriot, d/b/a T-Joe's Welding Service. The policy was a combination automobile and comprehensive general liability policy with limits of $100,000.00 per person and $300,000.00 per occurrence. The 1977 pickup truck clearly was not covered under the automobile liability insurance portion of the policy, because it was not listed in the schedule as a designated, owned, or covered automobile. However, a considerable dispute has developed over the question of whether the 1977 pickup truck was covered under the CGL portion of the policy.
In a thoughtful opinion, the trial court held that CGL coverage existed. The court concluded that the truck, which had welding equipment bolted and welded to its bed, was a self-propelled land vehicle maintained by Mr. Theriot for the sole purpose or aim of affording mobility to the welding equipment permanently attached to the bed of the truck. Because these facts coincided, the court found that the truck satisfied one of the policy's definitions of "mobile equipment". Since the truck was "mobile equipment" it was insured under the CGL portions of the Bituminous policy.
Bituminous contests the court's findings. On appeal Bituminous argues: (1) the 1977 pickup was not maintained for the sole purpose of affording mobility to the welding equipment since it had been used primarily by Todd Theriot for his personal use; (2) in construing the insurance contract, the trial court completely disregarded the clear intent of the contracting parties by concluding that the language was ambiguous; (3) at the time of the accident, the 1977 pickup was not "mobile equipment" in locomotion.
None of Bituminous' contentions has merit. We believe the issue was properly decided by the trial court for the reasons stated in that court's opinion, which reasons we take the liberty of quoting and adopt as our own:
"* * *
The factual context in which this issue arises is important to its decision. The Court therefore will first state the facts which it considers pertinent to a determination of whether the Bituminous policy provides coverage for this accident.
Joseph Theriot testified that he has been a self-employed welder for six or seven years, operating his business under the name of T-Joe's Welding Service. Todd Theriot has been employed by his father since he graduated from high school in May, 1979. The evidence further establishes that all of the welding work is done on site, with the result that the welding equipment to be used must be transported to each job site. Mr. Theriot's business is currently being operated with two welding rigs, one installed on Mr. Theriot's truck and the other on Todd's truck. At the time of the accident in question, the welding equipment currently on Todd's new 1979 truck had been `bolted and welded' to the bed of the 1977 pickup truck which was involved in the accident. This welding rig was purchased by Mr. Theriot with a check from T-Joe's Welding Service, and the welding bottles and other equipment were rented by T-Joe's. After the accident, this equipment *722 was transferred from the 1977 truck to Todd's new 1979 truck.
According to Todd's testimony, nothing else can be put into the bed of a pickup truck which has a welding rig attached to it. Todd further testified that, prior to his graduation from school, he made use of the 1977 truck to go to and from school and for some personal errands. He further stated that he used the welding equipment in this truck during his welding classes at school and to do welding work for friends. Since his graduation, he has used the equipment for his father's business. On the day of the trial, Todd's truck and equipment were on a job site in Baton Rouge and thus were not available for personal use.
Bituminous argues that the 1977 Ford pickup is an `automobile' which is excluded under the terms of the CGL portion of the policy. The `Exclusions' section of the CGL policy provides in part:
`This insurance does not apply:
* * * * * *
b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
1) any automobile or aircraft owned or operated by or rented or loaned to any insured, ...'
Under the `Definitions' section of the policy, an `automobile' is defined as:
`... a land motor vehicle, trailer, or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;' (Emphasis added)
It is quite clear from the foregoing portions of the CGL policy that if the 1977 pickup truck involved in this accident is considered to be an `automobile', then there is no insurance coverage. On the other hand, however, if the pickup truck is considered to be `mobile equipment', the foregoing exclusion is inapplicable. The Court must therefore determine whether or not the 1977 Ford pickup truck may permissibly be classified as `mobile equipment' within the meaning of that term as defined by the insurance policy.
`Mobile equipment' is defined in the policy as follows:
`"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;'
Bituminous argues that the pickup truck cannot be classified as `mobile equipment' because (1) the welding equipment did not form an integral part of and was not permanently attached to the vehicle, (2) it was not designed or maintained for the sole purpose of affording mobility to the welding equipment, and (3) it was devoted to Todd's `personal use, to get to and from school and to get around with friends.'
To determine the merits of these contentions, the Court has closely examined the pertinent provisions of the insurance policy. Because the 1977 Ford pickup is a self-propelled land vehicle, it is `mobile equipment' if it fulfills one or more of the four definitional criteria. For the following reasons, the Court concludes that this truck meets the requirements of section (4) of the definition, and is therefore `mobile equipment' within the meaning of the Bituminous policy.
The terms of the `mobile equipment' definition clearly indicate that Bituminous intended distinctions as to the meaning of the *723 words `maintained', `designed', and `use'. Section (2) of the definition includes within the meaning of `mobile equipment' a land vehicle `maintained for use exclusively on premises owned by or rented to the named insured.' Thus, regardless of a vehicle's design, it can be considered `mobile equipment' if its `use' is restricted to a certain territory.
Section (3) of the definition includes within the meaning of `mobile equipment' a land vehicle `designed for use principally off public roads.' It is clear that the vehicle contemplated by this section must possess an engineering design `for use principally off public roads' regardless of the manner in which it is maintained.
In section (4) of the `mobile equipment' definition, Bituminous has employed both the words `designed' and `maintained', but has omitted the word `use'. The Court finds that the omission of the word `use' is significant in terms of the meaning of this section. Under this section, a land vehicle is `mobile equipment' if it is `designed', i. e., structurally suited, or `maintained', i. e., functionally suited, `for the sole purpose of affording mobility to `welding equipment' forming an integral part of or permanently attached to such vehicle.' There is no doubt in this Court's mind, under the evidence presented, that the 1977 pickup truck was `maintained' by Joseph Theriot `for the sole purpose (not use) of affording mobility to' welding equipment. The evidence clearly creates an inference that Mr. Theriot's sole purpose, i. e., his goal or aim, for maintaining the pickup truck was to provide mobility to a second welding rig which would be used by his son. It is true that the evidence indicates that the truck was `used' for personal transportation. However, this fact is not in conflict with the court's conclusion. If Bituminous had intended to make `use' of the vehicle a significant factor in applying section (4) of the definition, it certainly would have included this word in the text of section (4) as it did in sections (2) and (3). The omission of the word `use' from section (4) clearly indicates that the use of a vehicle for personal convenience is not relevant in determining the inclusion of such a vehicle within the meaning of `mobile equipment'.
The additional contention urged by Bituminous that the welding equipment was neither an integral part of nor permanently attached to the 1977 pickup truck is without merit. Although the welding rig was transferred to Todd's 1979 pickup after the accident, both of the Theriots testified that the rig was `bolted and welded' to the bed of the 1977 vehicle. Such an attachment is as permanent as the attachment of the truck body to the truck chassis. The Court must therefore conclude that the welding equipment was `permanently attached' to the 1977 pickup.
In concluding that the 1977 pickup truck is `mobile equipment' within the meaning of the Bituminous insurance policy, the Court has applied the well-established rule that `any doubt or ambiguity as to the meaning of a provision in an insurance policy must be construed liberally in favor of the insured and against the insurer'. Credeur v. Luke, 368 So.2d 1030 (La.1979) at p. 1032. Although there are reasonable constructions of the phrase `maintained for the sole purpose of affording mobility to (welding) equipment' which would result in denial of coverage, the Court has adopted a reasonable construction which affords protection to the insured. In Carney v. American Fire & Indemnity Company, 371 So.2d 815 (La. 1979), the Louisiana Supreme Court cited with approval portions of Judge Tate's dissent in a 1963 Third Circuit case. In instances of ambiguity,
... as a matter of law the Courts are required to adopt that policy construction which affords protection to the insured, as against another construction which does nothowever much the Court may feel that the insurance company which wrote and sold the policy and collected a premium therefor might have intended an equally reasonable construction which is, however, less favorable to its policyholder. (371 So.2d at 819).
Because the Court has found that the 1977 pickup which was involved in the accident is `mobile equipment', the automobile exclusion clause of the CGL portion of the policy is not applicable in this case.
*724 Counsel for Bituminous also argues that this Court should find the CGL portion of the Bituminous policy inapplicable on the basis of the principles set forth in the recent Third Circuit case of Lucas v. Deville (No. 7185, April 9, 1980) and the cases cited therein. The following language from the Lucas decision is pertinent:
We think the distinction made in the Sparkman [v. Highway Insurance Company, 266 F.Supp. 197 (W.D.La.1967)] case and others is valid and is a common sense interpretation. We are impressed with the analysis which draws a distinction between a transportation or locomotion hazard on the one hand, and an operational hazard on the other. The former would reasonably call for application of automobile liability insurance. With respect to circumstances such as those present in Heiser [v. Gibson, 386 F.Supp. 901 (E.D.La.1974)], involving accidents occurring during locomotion on highways, the automobile exclusion in comprehensive liability policies is properly invoked to eliminate coverage. (p. 13)
Because the instant case involves an accident which occurred during locomotion on a highway, Bituminous contends that the automobile exclusion clause precludes coverage under the CGL portion of the policy. The Court, however, concludes that Lucas and the cases cited therein are inapplicable in this case because the CGL portion of the Bituminous policy specifically provides coverage for accidents occurring during locomotion on highways.
Part II of the CGL policy, `Persons Insured', provides:
Each of the following is an insured under this insurance to the extent set forth below:
* * * * * *
(e) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law.
* * * * * *
(ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation .... (Emphasis added)
Because of this provision in the Bituminous policy, the Court cannot take the position urged by Bituminous. To interpret this policy according to the principles set forth in Lucas would be to ignore the clear language of the policy, and such an interpretation would eliminate the possibility of coverage under the provision cited above. Under this provision, it is clear that Todd and Joseph Theriot are insureds under the CGL policy with respect to Todd's operation of the mobile equipment at the time of the accident.[2]
Bituminous further argues that the Safeco insurance policy which covered the 1977 pickup constitutes `other valid and collectible insurance' which is available to the Theriots, and that the Theriots are therefore not insureds under the Bituminous policy with respect to this accident. Part II of the CGL policy, `Persons Insured', provides:
Each of the following is an insured under this insurance to the extent set forth below:
* * * * * *
(e) with respect to the operations of ... of mobile equipment ...,
* * * * * *
*725 (ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any such person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization. (Emphasis added)
Bituminous argues that this provision allows it to escape liability completely because the Safeco policy, with a twenty thousand ($20,000.00) dollar limit of liability, is valid and collectible. The Court, however, concludes that there is no valid and collectible insurance available to the Theriots after the twenty thousand ($20,000.00) dollar Safeco policy is exhausted. Bituminous is therefore liable up to the policy's limit of Liability for all damages which exceed twenty thousand ($20,000.00) dollars.
* * *"

QUANTUM
The district court detailed Richard (Ricky) Doty's injuries in the following manner:[3]
"Richard Doty is twenty-one years old and has been studying diesel mechanics at vocational-technical school since February, 1978. He had fallen asleep prior to the accident and was leaning against the right rear window of the Lester vehicle at the time of the collision. As a result he sustained severe lacerations and abrasions of the right side of his face and head. He was taken by ambulance to Our Lady of Lourdes Hospital, where he remained for several days. Ricky testified that the hair was shaved from half of his head and that his hair is `just now back in shape'. Dr. Mes, a plastic surgeon, treated Ricky from March 24 to June 12, 1979. In addition to the abrasions and lacerations, he stated that Ricky had sustained a mild whiplash injury and a fracture of the right zygomatic bone. At the last visit on 6/12/79, pieces of glass were still coming through his skin. Ricky testified at the trial that he can still feel small pieces of glass in his head and face. At the trial, the Court observed several facial scars and an area of discoloration on Ricky's face. Dr. Mes classifies the scar on Ricky's cheek as Grade 4, which is the most conspicuous grade, visible from across a room. Corrective surgery could improve the scar to Grade 2, one which is visible at conversational distance. Ricky testified that he wore a neck brace (not prescribed) for approximately 1½ months after the accident in order to relieve his neck pain. He also stated that he developed knee and back pain subsequent to the accident. Dr. Cobb, an orthopedic surgeon, saw him on two occasions in March, 1980. He stated that Ricky's back complaints were `primarily postural in nature, secondary to an apparent flexion injury', and that his knee problems were caused by a `contusion or a subchronial injury to his patella'. He recommended exercises for his back and gave him conservative treatment for his knees. The only medication he prescribed was aspirin. Although heavy work would have aggravated the pain, Dr. Cobb felt that these injuries would not be long-lasting and would not prevent Ricky from doing anything that he wants to do. The Court will award Ricky the sum of twenty thousand ($20,000.00) dollars as general damages for these injuries."
In addition to the general damage award, the court awarded Doty $2,646.61 for proven medical expenses incurred in connection with the accident.
The Theriots argue that the general damage award is too high and should be reduced to $12,500.00. Doty has answered the appeal asking for an increase to the amount originally prayed for, $350,000.00.
Although the general damage award to Doty is more generous than the awards made in the cases cited by the Theriots and less generous than the awards made in the *726 cases cited by Doty,[4] we cannot say, after reviewing the severity of this plaintiff's injuries, that the trial court has abused its `much' discretion in placing the general damage award at $20,000.00 rather than a lower or higher amount. Reck v. Stevens, 373 So.2d 498 (La.1979).

DECREE
For the above and foregoing reasons the judgment of the district court is affirmed. Costs are assessed one-half to Bituminous and one-half to the Theriots.
AFFIRMED.
CULPEPPER, Judge, dissenting.
I dissent from that portion of the majority opinion which holds the Bituminous policy is ambiguous and must be construed against the insurer so as to afford coverage.
The Bituminous policy in question is a combination automobile and comprehensive general liability policy issued to Mr. Joseph Theriot, d/b/a T-Joe's Welding Service. Joseph Theriot owned a 1976 Ford pickup truck which was specifically described in the policy and covered by the automobile liability provisions thereof. In addition to this 1976 pickup truck, Joseph Theriot also owned the 1977 Ford pickup truck at issue here, which he originally purchased solely for his son's personal use, but which at the time of the accident was being used in the welding business as well. The 1977 truck is not described specifically in the policy. The contention by plaintiff is that the truck was covered under the comprehensive general liability provisions of the policy.
The comprehensive general liability provisions of the policy expressly exclude liability arising out of the maintenance or use of "any automobile." The term "automobile" is defined as a "land motor vehicle ... designed for travel on public roads ... but does not include mobile equipment." The term "mobile equipment" is defined as a "land vehicle ... whether or not self propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers ... generators... welding and building cleaning equipment...."
The obvious intent of the definition of "mobile equipment" was to cover such equipment maintained by Joseph Theriot for use in his welding business. Definition (1) covers vehicles not subject to motor vehicle registration, (2) covers those vehicles maintained for use exclusively on the premises owned by or rented to Mr. Theriot, and (3) covers vehicles designed for use principally off public roads. Then definition (4) is intended to cover vehicles which may be subject to motor vehicle registration or may be maintained for use on public roads, but (4) is expressly limited to those vehicles which are "maintained for the sole purpose of affording mobility to equipment ... permanently attached to such vehicles." (Emphasis supplied) Thus, in the present case, the 1977 Ford pickup truck at issue is covered by (4), provided it is "maintained for the sole purpose of affording mobility to equipment... permanently attached to such vehicles." (Emphasis supplied) If the truck was not maintained for this "sole purpose", it was not covered by the comprehensive liability provisions. It would have to be described in the automobile liability provisions, and a premium paid for that coverage.
*727 In the present case, the evidence shows clearly, as the majority states in its opinion, that the 1977 pickup was not maintained by Mr. Joseph Theriot for the "sole purpose" of affording mobility to the welding equipment. The truck was also maintained for the personal use of Joseph Theriot's son, Todd. As a matter of fact, at the time of the accident one morning at 3:00 A.M., Todd was using the vehicle to return home from a disco.
The trial judge held, and the majority in this Court adopts the reasoning of the trial judge, that the failure of the policy to employ the word "use" in definition (4) of mobile equipment makes it ambiguous. Essentially, the trial judge states:
"The evidence clearly creates an inference that Mr. Theriot's sole purpose, i. e., his goal or aim, for maintaining the pickup truck was to provide mobility to a second welding rig which would be used by his son. It is true that the evidence indicates that the truck was `used' for personal transportation. However, this fact is not in conflict with the court's conclusion. If Bituminous had intended to make `use' of the vehicle a significant factor in applying section (4) of the definition, it certainly would have included this word in the text of section (4) as it did in sections (2) and (3). The omission of the word `use' from section (4) clearly indicates that the use of a vehicle for personal convenience is not relevant in determining the inclusion of such a vehicle within the meaning of `mobile equipment'."
I cannot follow this reasoning. In my view, the words "maintained for the sole purpose of affording mobility to equipment" are clear and free of ambiguity. This simply means that if Mr. Theriot maintained the truck solely for moving the welding equipment it was covered. But if he maintained it for any other purpose, such as his son's personal transportation, it was not covered. Obviously, the risk was increased by his son's driving the truck for non-business transportation.
The trial judge's reasoning, adopted by the majority, is that if the words "for use" had been added in (4) after "maintained", the definition would not be ambiguous. In my view, the words "maintained for the sole purpose" are more clear and express better the intent of the policy than would the words "maintained for the sole use" of affording mobility to equipment.
The applicable rule of construction of insurance policies is set forth in Harmon v. Lumbermen's Mutual Casualty Company, 247 La. 363, 170 So.2d 646 (1965) as follows:
"A contract of insurance, like every other contract, is the law between the parties, and every stipulation therein must be construed as written. Smith v. Washington Nat. Ins. Co., La.App., 178 So. 691. `An insurance policy is a contract, and the rules established for the construction of written instruments apply to contracts of insurance. Hemel v. State Farm Mutual Automobile Insurance Company, 211 La. 95, 29 So.2d 483. The words used in such a contract are to be understood in the common and usual significance, without attending so much to grammatical rules as to general and popular use. LSA-C.C. Art. 1946. Also, all ambiguities in the provisions of an insurance policy are to be construed in favor of the insured and against the insurer, subject to the qualification that if the intent of the policy is clearly evidenced by the terms of the contract, then the policy must be given a reasonable interpretation with relation to such intent. * * *' Liprie v. Michigan Millers Mutual Insurance Co., La.App., 143 So.2d 597. * * *" 170 So.2d 646, 651.
In my view, the provisions of the policy at issue are not ambiguous. Moreover, the intention of the policy is clearly evidenced by the terms of the contract as a whole. The comprehensive liability provisions were not intended to cover a pickup truck unless that truck was maintained by the insured for the "sole purpose" of affording mobility to equipment required in his welding business. Since this truck was also maintained for Todd's personal non-business transportation, it was not covered.
*728 It is noteworthy that in Agency Management Corporation v. Riviere, 302 So.2d 388 (La.App. 1st Cir. 1974), the court considered the identical policy provisions defining "mobile equipment" and held them to be free of ambiguity. The arguments as to ambiguity made in that case are not the same as in the present case, but the court concluded the definition of "mobile equipment" is not ambiguous.
For the reasons assigned, I respectfully dissent, both in this case and in the two companion cases. It is my view that the Bituminous policy did not cover the 1977 Ford pickup truck involved in the accident.
NOTES
[1] Chaudoir v. Theriot, 400 So.2d 730 (La.App. 3rd Cir. 1981) (# 8207), and Deshotel v. Safeco Insurance Company, 400 So.2d 728 (La.App. 3rd Cir. 1981) (# 8208).
[2] Footnote by the Court of Appeal. The definitions of "automobile" and "mobile equipment" in the Lucas policy are identical to those in the Bituminous policy. However, there apparently is no corresponding provision in the Lucas policy to the "Persons Insured" provision of the CGL coverage in the Bituminous policy, which provision indicates that coverage exists "with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment ...." Inclusion within the Bituminous policy of language which so clearly contemplates CGL coverage of highway accidents involving (self-propelled) mobile equipment surely forecloses reliance upon the Lucas distinction between locomotion hazards and operational hazards and renders that distinction inapplicable to the present case.
[3] All references to the record have been deleted.
[4] The Theriots rely upon McDonald v. American Fire & Indemnity Ins., 378 So.2d 1013 (La. App. 2nd Cir. 1979); Parker v. Travelers Insurance Company, 369 So.2d 1120 (La.App. 1st Cir. 1979), writ denied 371 So.2d 1342 (La. 1979); Celestine v. Segura, 364 So.2d 246 (La. App. 3rd Cir. 1978); and Watson v. Bechtel, 360 So.2d 260 (La.App. 4th Cir. 1978). Doty's bid for a higher award is based upon the cases of Ashley v. Roberts, 331 So.2d 539 (La.App. 1st Cir. 1976); Martin v. Roberts, 331 So.2d 541 (La.App. 1st Cir. 1976); and McDonald v. Fidelity & Casualty Company of New York, 317 So.2d 267 (La.App. 3rd Cir. 1975).