_____

No. 95-3867
_____

Kathryn Marren,                *
                               *
          Appellant,  *
                               *
  v.                           *        Appeal from the United States
                               *        District Court for the Eastern
Mutual Life Insurance          *     District of Missouri.
Company of New York,           *
                               *
          Appellee.            *

_____

Submitted:  April 12, 1996

Filed:  May 30, 1996
_____

Before MAGILL and LOKEN, Circuit Judges, and GOLDBERG,* Judge.
_____

GOLDBERG, Judge.


     Kathryn Marren filed an action seeking the proceeds from her ex-
husband's life insurance policy.  The district court[1] found that Ms.
Marren's ex-husband had cancelled his life insurance policy before he died,
and it entered summary judgment against her.  Because we find that genuine
issues of material fact exist, we reverse the judgment of the district
court and remand for further proceedings.

_____

     *THE HONORABLE RICHARD W. GOLDBERG, Judge, United States
     Court of International Trade, sitting by designation.

     [1]THE HONORABLE CHARLES A. SHAW, United States District Judge
for the Eastern District of Missouri.

## I.  BACKGROUND

On May 24, 1989, Michael Marren took out a life insurance policy from Mutual Life Insurance Company of New York ("Mutual Life").  He named his wife, Kathryn Marren, as the primary beneficiary and their children as alternate beneficiaries.  In December of 1992, Michael and Kathryn Marren divorced.

Section 10 of Mr. Marren's life insurance policy provided, "This policy may be surrendered at any time for its cash value less any debt." On April 19, 1993, Mr. Marren telephoned Mutual Life and indicated that he wished to surrender his policy.  Mutual Life did not, however, cancel the policy immediately.  Instead, Mutual Life sent Mr. Marren a "Full or Part Surrender Request" form ("surrender request form").

The surrender request form demanded, "The policy or a Lost Policy Statement (Form #3551) ("lost policy form") must accompany any (surrender) request."  This demand was arguably made in accordance with Section 17 of Mr. Marren's policy, which provided, "In any settlement of this Policy, by reason of death, surrender, or otherwise, we may require the return of the Policy."

Mr. Marren filled out certain portions of the surrender request form, indicating that he wished to surrender his insurance policy for its cash value, less indebtedness.  Mr. Marren did not, however, return his policy, or a lost policy form, to Mutual Life.  Instead, he wrote, "CANNOT FIND POLICY" on the surrender request form.  Mutual Life received the surrender request form on May 3, 1993.  It did not immediately send Mr. Marren the cash value of his policy.

Mutual Life has internal policies that prohibit the processing of a surrender, or the disbursement of the cash value of an insurance policy, until Mutual Life receives a policy document, or

a lost policy form, from the insured.  More specifically, one Mutual Life document instructs employees:

> If the policyowner [sic] indicates the policy is lost, a Statement of Loss (Form #3551) must be obtained.
>
> . . . If Lost Policy Form is okay, process surrender and attach 3551 to surrender source.

Another Mutual Life document further instructs employees:

> If the Policy Contract or Lost Policy Form is not received when surrendering a Life Policy below 7[,]500[,]000  . . . the surrender proceeds must be held without interest pending receipt of the policy.

On May 9, 1993, six days after Mutual Life received Mr. Marren's surrender request form, Mr. Marren died as a result of a gunshot wound to the chest.  At that time, Mutual Life's computer records showed that Mr. Marren's insurance policy was in effect

On or about May 17, 1993, Kathryn Marren met with a Mutual Life insurance agent to see if she would receive the proceeds from Mr. Marren's life insurance policy.  The agent told Ms. Marren that she would.  On June 22, 1993, however, Mutual Life sent Ms. Marren a letter informing her that Mr. Marren had surrendered his life insurance prior to his death and that she would not receive any proceeds.

On March 11, 1994, Ms. Marren filed a civil action in the Circuit Court of the City of St. Louis, claiming that she should receive the proceeds from Mr. Marren's life insurance policy.  On April 5, 1994, Mutual Life removed the case to the United States District Court for the Eastern District of Missouri on the basis of diversity of citizenship.  On October 18, 1995, the district court granted Mutual Life's motion for summary judgment, finding that Mr.

Marren had definitely and unconditionally requested cancellation of his policy before he died.

## II.  DISCUSSION

Ms. Marren asserts that the district court erred in entering summary judgment against her because issues of fact exist concerning the meaning of ambiguous terms used in the surrender provisions of Mr. Marren's life insurance policy.  Ms. Marren also claims that because Mr. Marren failed to return either his policy or a lost policy form to Mutual Life, as required by the surrender provisions of the policy, he failed to cancel the policy.  Mutual Life, on the other hand, argues that Mr. Marren complied with the provision of the policy that allowed him to surrender his insurance at any time.  Therefore, according to Mutual Life, the district court properly entered summary judgment in its favor.

We review a district court's ruling on a motion for summary judgment de novo.  B.B. v. Continental Ins. Co., 8 F.3d 1288, 1291 (8th Cir. 1993). We will affirm if the evidence, viewed in the light most favorable to the non-moving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Id.

The parties agree that Missouri law applies to this diversity action. Missouri law provides that in the absence of other insurance policy requirements, "the sole requirement to effect cancellation by an insured is a definite and unconditional request for cancellation actually communicated to the Company."  Dupeck v. Union Ins. Co. of Am., 329 F.2d 548, 557 (8th Cir. 1964) (citation omitted) (emphasis in original).

If, however, an insurance policy has specific cancellation requirements, Missouri law provides that "strict and literal compliance with the contractual requirements must be met."  S & P

-4-

Oyster Co. v. U.S. Fidelity & Guar. Co., 865 S.W.2d 379, 382 (Mo. App. 1993).  For example, if a policy requires the insured to return the policy by registered letter in order to effect cancellation, then the insured cannot cancel by written notice alone.  Farmers Mut. Hail Ins. Co. of Mo. v. Minton, 279 S.W.2d 523 (Mo. App. 1955).  Similarly, if a policy requires that the insurer address all notices of cancellation to the insured business, then the insurer cannot cancel by addressing a notice of cancellation solely to the president of that insured business.  Safeco Ins. Co. of Am. v. Stone & Sons, Inc., 822 S.W.2d 565 (Mo. App. 1992).

It is usually the court's job to interpret the cancellation provisions of an insurance policy, as the meaning of terms in a contract ordinarily presents a question of law.  Auto Owners Mut. Ins. Co. v. Wieners, 791 S.W.2d 751, 758 (Mo. App. 1990).  If, however, the court finds that the terms of the policy are ambiguous, then it may admit extrinsic evidence "to show the real intent of the parties."  Prestigiacamo v. American Equitable Assur. Co. of N.Y., 221 S.W.2d 217, 221 (Mo. App. 1949).  If "the surrounding circumstances or other extrinsic evidence admitted on the ambiguity question raise issues of fact," then a jury will help the court to decide the meaning of the ambiguous terms.  Auto Owners Mut. Ins. Co., 791 S.W.2d at 758.

We find that the terms of Mr. Marren's life insurance policy are ambiguous.  Section 10 of the policy provides that the policy "may be surrendered at any time."  This language does not impose specific surrender requirements on the insured.  Section 17, on the other hand, provides, "In any settlement of this Policy by reason of death, surrender, or otherwise, we may require the return of the Policy."  This language indicates that if Mutual Life exercises its prerogative to do so, it may require the insured to return the policy, or a lost policy statement, in order to complete his election to surrender the policy.  See generally Farmers Mut. Hail Ins. Co. of Mo., 279 S.W.2d at 527 (discussing return of a lost

policy statement instead of the policy itself).  It is therefore unclear whether the cancellation provisions of the policy required Mr. Marren to return the policy, or a lost policy form, along with his surrender request form when Mutual Life demanded that he do so.

In addition, we find that extrinsic evidence that bears on the interpretation of the ambiguous terms in Mr. Marren's policy raises genuine issues of material fact for the jury to resolve.  The deposition testimony of Mutual Life's Manager of Policy Service, Kathleen Ward, indicates that Mutual Life did not intend to require Mr. Marren to return his policy in order to effect cancellation.  According to Ms. Ward, Mutual Life merely seeks to recover policy documents from people who have cancelled their coverage in order to prevent future misunderstandings.  If, however, Mutual Life did not intend to require Mr. Marren to return his policy document, or a lost policy form, it could have cancelled Mr. Marren's policy when he indicated by telephone that he wished to surrender the policy.  Similarly, as soon as Mutual Life received Mr. Marren's surrender request form, it could have recorded the surrender and informed Mr. Marren, by disbursement of money or other means, that he was entitled to the cash value of his policy.  As Mutual Life did not take these actions, it may have intended to require Mr. Marren to return either his policy, or a form that provided specific information about the loss of the policy, in order to effect cancellation.  Indeed, both the demand on the surrender request form and Mutual Life's internal policies indicate that Mutual Life did not intend to process Mr. Marren's surrender request, or disburse the value of the policy, until it received either his policy or a lost policy form.

## III.  CONCLUSION

A jury must examine issues of fact presented by the extrinsic evidence in order to determine the intended meaning of the ambiguous terms in Mr. Marren's life insurance policy.

-6-

Consequently, we reverse the decision of the district court and remand this case for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.