# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-1657

———————

| | | |
|---|---|---|
| Indiana Lumbermens Mutual Insurance Company, an Indiana Corporation, | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Timberland Pallet and Lumber Company, Inc., a Missouri Corporation; Justin C. Pliler; Frank Cockrum, | * | |
| | * | Appeals from the United States |
| | * | District Court for the |
| Defendants. | * | Western District of Missouri |
| | * | |
| William Richard Chamberlain; Deanna Sue Chamberlain; William Timothy Chamberlain; Tabitha Gail Chamberlain; Tiffany Rene Chamberlain, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Appellants, | * | |
| | * | |
| Mariah Lewis, | * | |
| | * | |
| Defendant. | * | |

———————

No. 98-1931

———————

| | |
|---|---|
| Indiana Lumbermens Mutual Insurance Company, an Indiana Corporation, | * |
| | * |

```
                                         *
              Appellee,                  *
                                         *
         v.                              *
                                         *
Timberland Pallet and Lumber Company,    *
Inc., a Missouri Corporation,            *
                                         *
              Appellant.                 *
                                         *
Justin C. Pliler; Frank Cockrum; William *
Richard Chamberlain; Deanna Sue          *
Chamberlain; William Timothy             *
Chamberlain; Tabitha Gail Chamberlain;   *
Tiffany Rene Chamberlain; Mariah Lewis   *
                                         *
              Defendants.                *
```

_____

Submitted:  November 16, 1998

Filed:   October 28, 1999

_____

Before McMILLIAN, FLOYD R. GIBSON and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Timberland Pallet & Lumber Co. (Timberland) and William R. Chamberlain, Deanna Chamberlain, William T. Chamberlain, Tabitha Chamberlain, and Tiffany Chamberlain (the Chamberlains) appeal from a final order entered in the District Court[1] for the Western District of Missouri in favor of Indiana Lumbermen's Mutual Insurance

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

-2-

Co. (Lumbermen's or the insurer) in this declaratory judgment action. Indiana Lumbermen's Mutual Insurance Co. v. Timberland Pallet & Lumber Co., Case No. 97-3083-CV-S-4 (W.D. Mo. Feb. 19, 1998) (judgment entry). At issue was whether Timberland was covered under a commercial general liability insurance policy issued by Lumbermen's for personal injury claims made against it by the Chamberlains. The district court found there was no coverage because Timberland's dump truck was not "mobile equipment" as defined by the policy. For reversal, Timberland and the Chamberlains (collectively appellants) argue the district court erred in declaring the jury advisory after the jury returned its verdict. They also argue that there was sufficient evidence to submit the case to the jury and that substantial evidence supports the jury's special findings of fact in their favor.

For the reasons discussed below, we hold the district court erred in declaring the jury advisory because the action was triable of right by a jury, but we hold the error was harmless. We also hold the district court did not err in holding, as a matter of law, that the dump truck was not mobile equipment and therefore excluded from coverage under the policy. Accordingly, we affirm the judgment of the district court.

The district court had diversity jurisdiction under 28 U.S.C. § 1332 over this declaratory judgment action. Lumbermen's is an Indiana corporation and its principal place of business is located in Indiana; Timberland is a Missouri corporation and its principal place of business is located in Missouri; the individual defendants were all citizens and residents of Missouri. Appellants filed timely notices of appeal under Fed. R. App. P. 4(a). We have appellate jurisdiction under 28 U.S.C. § 1291 over the final decision of the district court.

Most of the underlying facts are not in dispute. On July 19, 1993, a 1970 International dump truck owned by Timberland and driven by Timberland employee Justin Pliler collided with the Chamberlains' truck on a public highway (U.S. 160). The Chamberlains were seriously injured.

Timberland manufactures hardwood pallets and lumber. This activity produces sawdust which is disposed of as part of its business. Timberland bought the dump truck in 1991. At the time of purchase the dump truck was licensed and titled. At the time of the accident, however, it was not licensed. The dump truck was used to move sawdust from one location to another on Timberland's premises. It is self-propelled, required little maintenance, was refueled on the premises (using gasoline cans), and was rarely driven off the premises. On at least one other occasion, however, it had been driven off the premises and on the public highways in order to deliver sawdust to a farm located less than 10 miles away. (There was some dispute about the number of times the dump truck had been driven off the premises in the previous year.) On the day of the accident, another Timberland employee told Pliler to take the license plate off another truck and put it on the dump truck for the trip to the farm. Pliler drove the dump truck to the farm, delivered the sawdust and was returning to Timberland when the accident occurred.

The Chamberlains filed a lawsuit against Timberland in Missouri state court and eventually obtained a default judgment in the amount of $3.2 million. Lumbermen's is Timberland's commercial general liability insurer. Lumbermen's refused to defend Timberland in the state court action on the ground that the dump truck was not covered under the policy because it was excluded from coverage under the auto exclusion. The commercial general liability insurance policy provides $1 million coverage for each occurrence. Timberland did not insure the dump truck under its automobile liability insurance policies. Timberland subsequently assigned its rights against Lumbermen's to the Chamberlains.

In February 1997 Lumbermen's filed this declaratory judgment action against Timberland and the Chamberlains in federal district court seeking a declaration that its commercial general liability insurance policy did not provide coverage for the accident and that it was not obligated to investigate, defend or pay any claim on behalf of Timberland or its employee Pliler. The policy contains an exclusion for bodily injury

or property damage arising out of the ownership, maintenance, use or entrustment to others of any "auto" owned or operated by any insured. The policy provides that "use" includes operation and "loading and unloading." The policy defines "auto" as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But 'auto' does not include 'mobile equipment.'" The policy further defines "mobile equipment" in part as

> any of the following types of land vehicles, including any attached machinery or equipment:
>
> . . . .
>
> b. [v]ehicles maintained for use solely on or next to premises you (referring to the insured) own or rent;
>
> . . . .
>
> f. [v]ehicles not described in a. (referring to bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads), b., c. (referring to vehicles that travel on crawler treads), or d. (referring to vehicles, whether self-propelled on not, maintained primarily to provide mobility to permanently mounted power cranes, shovels, loaders, diggers, or drills, or road construction or resurfacing equipment such as graders, scrapers or rollers) above maintained primarily for purposes other than the transportation of persons or cargo.

The policy further provides that self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos": equipment designed primarily for snow removal, road maintenance but not construction or resurfacing, and street cleaning, cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers, and air

compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

Timberland denied that the dump truck was an "auto" as defined by the policy. The Chamberlains filed an answer and demanded a jury trial. In pre-trial orders, the district court scheduled the case for jury trial but deferred ruling on whether the Chamberlains were entitled to a jury trial. Lumbermen's moved to strike the demand for jury trial about a month before the trial was scheduled to begin. The Chamberlains opposed the motion to strike. At the pre-trial conference the district court denied the motion to strike the jury demand. The case was tried to a jury. The trial took two days. The district court found that the terms of the policy were not ambiguous. (Trial Transcript at 257.) The district court denied the motion of Lumbermen's for directed verdict at the close of the plaintiff's case and also denied the parties' motions for directed verdict at the close of all the evidence.

The district court submitted to the jury a special verdict consisting of three interrogatories: (1) whether the dump truck was an "auto" as defined in the insurance policy, (2) whether the dump truck was "mobile equipment" as defined in the insurance policy, and (3) whether the dump truck was being operated within the scope and course of employment at the time of the accident. The jury answered the first question "no" and the second and third questions "yes," finding that the policy did provide coverage for the dump truck (because the dump truck was mobile equipment and thus not an auto).

The district court then dismissed the jury and announced that the issues presented were questions of law for the court to decide and that the jury would be advisory only. See Trial Transcript at 430-31 (Appellants' Appendix at 266-67). The district court had already found that the terms of the policy were not ambiguous. See id. at 257 (during conference about objections to proposed instructions). The district court found that the dump truck was not used solely on or adjacent to Timberland's

-6-

premises and that the primary use of the dump truck was for the transportation of persons or cargo, specifically, the transportation of sawdust on the premises. See slip op. at 1-2. The district court concluded that the dump truck was not a vehicle of the type which constituted "mobile equipment" within the exception to the auto exclusion in the policy. See id. at 2. In addition, the district court noted that, at the time of the accident, the dump truck was "being operated as an 'auto,'" off Timberland's premises, to transport persons and cargo to a destination several miles away from Timberland's premises, and that "[t]he risk created by this activity was clearly not contemplated for coverage under the policy." Id. (the district court also made oral findings from the bench). The district court entered judgment in favor of Lumbermen's and against appellants. This appeal followed.

RULE 39(c) AND ADVISORY JURY

Appellants first argue that the district court erred in declaring the jury advisory only. Appellants argue that insurance liability is a legal issue, not an equitable one, and that the Seventh Amendment guaranteed them a jury trial on that issue, even though the case was brought as a declaratory judgment action. Alternatively, appellants argue that, even if they were not entitled to a jury trial as a matter of right, the district court abused its discretion under Fed. R. Civ. P. 39(c) by failing to provide them with advance notice that the jury would be advisory only and by waiting until after the jury returned its verdict before informing them of its intention to treat the jury as advisory only. Appellants argue that the district court's actions in effect improperly "vetoed" the jury's verdict.

For the reasons discussed below, we hold the district court erred in declaring the jury advisory because the action was triable of right by a jury, but we hold the error was harmless.

The Seventh Amendment preserves "[i]n Suits at common law, . . . the right of trial by jury." U.S. Const. amend. VII. Fed. R. Civ. P. 38(a) preserves the right to trial by jury. See also Fed. R. Civ. P. 57 (preserving right to trial by jury in declaratory judgment action under circumstances and in manner provided in Rules 38 and 39). Whether a party has a right to trial by jury in federal court is a question of law subject to de novo review. See, e.g., Northgate Homes, Inc. v. City of Dayton, 126 F.3d 1095, 1098 (8th Cir. 1997). "Interpreting the Federal Rules of Civil Procedure [also] presents a question of law subject to de novo review." Burns v. Lawther, 53 F.3d 1237, 1240 (11th Cir. 1995) (per curiam).

First, appellants were entitled to a jury trial as a matter of right. This action is essentially a legal dispute for money damages, which, absent the procedure for declaratory judgment, would have been tried at law by a court and a jury. See Johnson v. Fidelity & Casualty Co., 238 F.2d 322, 324 (8th Cir. 1956) (declaratory judgment action by insurer against insureds over coverage under insurance policy), citing Pacific Indemnity Co. v. McDonald, 107 F.2d 446, 448 (9th Cir. 1939) (same). The right to a jury trial in a civil case is not absolute and can be waived if the request for a jury trial is not timely made. See Burns v. Lawther, 53 F.3d at 1240. "[B]ecause the right to a jury trial is fundamental, 'courts must indulge every reasonable presumption against waiver.'" Id., citing LaMarca v. Turner, 995 F.2d 1526, 1544 (11th Cir. 1993), cert. denied, 510 U.S. 1164 (1994). Here, appellants made a timely demand for a jury trial. See Fed. R. Civ. P. 38(b) (Timberland filed its answer on Apr. 7, 1997; the Chamberlains filed their answer, which included a demand for jury trial, within 10 days, on Apr. 10, 1997).

Because this action was one triable of right by a jury, the district court did not have the power to declare the jury advisory only. Fed. R. Civ. P. 39(c) does not apply to actions triable of right by a jury. See, e.g., Goodgame v. American Cast Iron Pipe Co., 75 F.3d 1516, 1520 (11th Cir. 1996) (post-Landgraf jury-tried case); Thompson v. Parkes, 963 F.2d 885, 888-89 (6th Cir. 1992) (where parties agreed and district court

ordered matter would be tried as jury case, case must be treated as if right to jury trial existed and district court could not treat jury verdict as advisory and, even if no right to jury trial existed, it would be abuse of discretion to declare jury verdict advisory after verdict is returned); Hildebrand v. Board of Trustees, 607 F.2d 705, 708-09, 711 (6th Cir. 1979) (holding district court could not declare jury advisory in action triable of right by a jury and, even if no right to jury trial existed in case, it would be abuse of discretion to declare jury advisory after both sides rested but before jury was instructed); AMF Tuboscope, Inc. v. Cunningham, 352 F.2d 150, 153, 155 (10th Cir. 1965) (holding district court could not declare jury advisory in action triable of right by a jury and, even if the district court had discretion to do so, it would be abuse of discretion to declare, "on the eve of trial," that case would be tried as nonjury case where district court had approved parties' stipulation to try case to jury).  Under Rule 39(c), actions not triable of right by a jury may be tried with an advisory jury, upon motion or of the district court's own initiative, although the district court's discretion to declare a jury advisory is not unlimited.  See Merex A.G. v. Fairchild Weston Systems, Inc., 29 F.3d 821, 826-27 (2d Cir. 1994) (where only claim surviving in case was not triable of right by a jury, district court did not abuse its discretion in declaring jury advisory after plaintiff's case-in-chief), cert. denied, 513 U.S. 1084 (1995); Bereda v. Pickering Creek Industrial Park, Inc., 865 F.2d 49, 52-53 (3d Cir. 1989) (holding that district court could not decide, after jury returned verdict, to treat jury verdict as advisory on issue not triable of right by jury but which was tried by consent of parties to non-advisory jury).

We also note that, "although Rule 39(c) does not expressly require advance notice to the parties of the court's intention to treat the jury as advisory, we agree that such notice is preferable." Merex A.G. v. Fairchild Weston Systems, Inc., 29 F.3d at 827.  "The parties are entitled to know prior to trial whether the jury or the court will be the trier of fact." Thompson v. Parkes, 963 F.2d at 889 (adopting a per se error rule for failure to give advance notice).  "Any good trial lawyer will testify that there are significant tactical differences in presenting and arguing a case to a jury as opposed to

a judge." Hildebrand v. Board of Trustees, 607 F.2d at 710 (noting that converting a jury trial to a bench trial in the middle of proceedings (more so at the end of trial as in the present case) interferes with counsel's presentation of their case and possibly prejudices one side or the other and wastes additional time and expense inherent to jury trial). However, we agree with the Second Circuit that failure to give advance notice alone, absent some demonstrable prejudice to the complaining party, would not be a basis for reversal. See Merex A.G. v. Fairchild Weston Systems, Inc., 29 F.3d at 827. But cf. Alexander v. Gerhardt Enterprises, Inc., 40 F.3d 187, 192 n.2 (7th Cir. 1994) (reviewing cases but refusing to adopt either per se error or demonstrable prejudice approach).

Having determined that the district court erred in declaring the jury advisory only, the question remains what to do next. Ordinarily, we would direct that judgment be entered based upon the jury verdict in order to give effect to that verdict. "[A] trial court cannot disregard a jury's verdict and substitute its own findings in deciding claims; otherwise, the court could effectively subsume the jury's function and deprive litigants of their right to trial by jury." Goodgame v. American Cast Iron Pipe Co., 75 F.3d at 1520. "The erroneous denial of a jury trial in a civil case is subject to harmless error analysis." Fuller v. City of Oakland, 47 F.3d 1522, 1533 (9th Cir. 1995). In Thompson v. Parkes, the district court denied motions for directed verdict and, because the district court did not announce its decision to treat the jury as advisory until after the verdict, the case was tried by the parties as a jury case, and the jury deliberated and decided the case as if it was the final arbiter of the dispute; under those circumstances, the court of appeals concluded that it was appropriate to give effect that verdict. See 963 F.2d at 890; cf. Hildebrand v. Board of Trustees, 607 F.2d at 712 (jury informed prior to deliberations that its verdict would be advisory only).

However, that is not our case. Here, although the procedural sequence was the same as in Thompson v. Parkes, the district court did not disregard the jury verdict and substitute its own findings for those of the jury. Instead, the district court's judgment

entry makes clear that what the district court did was properly, albeit belatedly, decide questions of law on the basis of undisputed facts. The interpretation of an insurance policy presents a question of law for the court, not the jury, to decide. See, e.g., Diocese of Winona v. Interstate Fire & Casualty Co., 89 F.3d 1386, 1392 (8th Cir. 1996); Marren v. Mutual Life Insurance Co., 84 F.3d 1068, 1070 (8th Cir. 1996). Although the district court should have recognized appellants' right to a jury trial, the district court correctly decided that it, and not the jury, was the decision-maker on the issue of contract interpretation, even though it effected that decision by improperly declaring the jury advisory. See, e.g., Alexander v. Gerhardt Enterprises, Inc., 40 F.3d at 191-93 (holding court's attempt to recognize actual jury verdict was improper in wake of Landgraf but affirming judgment on basis of court's own findings of fact and conclusions of law); United States v. Williams, 441 F.2d 637, 645 (5th Cir. 1971) (court should have recognized jury trial right but also should have declared directed verdict; judgment affirmed because there was no issue for jury determination). For that reason, it would not be appropriate to reinstate the jury verdict, and we hold the district court's declaring the jury advisory was harmless error.

CONTRACT INTERPRETATION

As a preliminary matter, appellants argue that, because the action was triable of right by a jury and the district court erred in declaring the jury advisory only, the standard of review is whether the evidence was sufficient to submit the case to the jury. Appellants also argue that substantial evidence supported the jury's finding that the dump truck was mobile equipment, and thus not excluded from coverage under the policy, and that the district court's finding to the contrary is clearly erroneous. On the merits, appellants argue that the district court erred in holding that the terms of the policy were not ambiguous. Appellants specifically argue that the phrase "maintained for use" in subdivision (b) and the term "transportation" in subdivision (f) in the definition of "mobile equipment" were ambiguous.

-11-

"Ordinarily, review of an erroneous denial of a jury demand arises following a bench trial on the issues covered by the jury demand." Fuller v. City of Oakland, 47 F.3d at 1533 (applying test for summary judgment or judgment as a matter of law). "The denial will be harmless only if 'no reasonable jury could have found for the losing party, and the trial court could have granted a directed verdict for the prevailing party.'" Id. (citation omitted). If this case were the typical erroneous denial of jury demand case, then we would agree that the standard of review would be whether the evidence was sufficient to submit the case to the jury or whether the issues could have been disposed of on summary judgment or judgment as a matter of law. See id.; Security Mutual Casualty Co. v. Affiliated FM Insurance Co., 471 F.2d 238, 245 (8th Cir. 1972) (applying directed verdict or JNOV test of sufficiency of evidence to submit case to jury); Shelter Mutual Insurance Co. v. Parrish, 659 S.W.2d 315, 317-20 (Mo. Ct. App. 1983) (holding denial of jury trial was harmless because evidence was insufficient to create issue of fact for submission to jury and insurer would have been entitled to directed verdict). However, as discussed above, this is not such a case. Here, although the district court should not have declared the jury to be advisory only, there were no issues for the jury to determine because the only issues in the case were questions of law for the court to determine.

Nor is this an advisory jury case because, as discussed above, the district court should not have declared the jury advisory only. In any event, even if the district court had declared the jury to be advisory only, the standard of review of the district court order is the same, with or without an advisory jury.

The responsibility for the decision rendering process remains with the judge even though an advisory jury is used. The court must prepare the findings of fact and conclusions of law, and it is in its discretion wholly whether to accept or reject, in whole or in part, the verdict of the jury. There have been occasional suggestions that the findings of an advisory jury should be accepted if they are sustained by the evidence or if they clearly are not erroneous, but these expressions misconceive the

-12-

function of an advisory jury and the complete freedom the judge has in using or disregarding its findings. Review on appeal is of the findings of the court as if there had been no verdict from an advisory jury, and there can be no review of supposed errors relating to rulings before and instructions to the advisory jury.

9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2335, at 211-13 (2d ed. 1995) (footnotes omitted); see Harris v. Secretary of United States Dep't of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997) (court of appeals reviews district court findings as if there had been no advisory jury); Security Mutual Casualty Co. v. Affiliated FM Insurance Co., 471 F.2d at 245 ("If the jury findings had been considered advisory only, . . . then the 'clearly erroneous' test would have been the appropriate test to be applied to the court's findings [of fact].") (emphasis added).

"Where the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law and this court reviews the finding de novo." Diocese of Winona v. Interstate Fire & Casualty Co., 89 F.3d at 1392; see Marren v. Mutual Life Insurance Co., 84 F.3d at 1070; Koch Engineering Co. v. Gibralter Casualty Co., 78 F.3d 1291, 1294 (8th Cir. 1996) ("The interpretation of the contractual provisions of an insurance policy is a matter of law reviewed by this court de novo."). We apply Missouri law in this diversity action.

If an insurance policy is unambiguous, it is to be enforced according to its terms, but if it is ambiguous, it is construed against the insurer. Whether or not the language of an insurance policy is ambiguous is a question of law. If the language of a policy is ambiguous (if there is duplicity, indistinctness or uncertainty in its meaning), and therefore open to different constructions, then it will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy. Additionally, exclusionary clauses of policies are strictly construed against the insurer, and if they are ambiguous they will be construed favorably to the insured.

-13-

American States Insurance Co. v. Broeckelman, 957 S.W.2d 461, 465 (Mo. Ct. App. 1997), citing Rice v. Fire Insurance Exchange, 946 S.W.2d 40, 42 (Mo. Ct. App. 1997). However, "where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." Harrison v. MFA Mutual Insurance Co., 607 S.W.2d 137, 142 (Mo. 1980) (en banc); see, e.g., Hartford Casualty Insurance Co. v. Budget Rent-A-Car of Missouri, Inc., 864 S.W.2d 5, 6 (Mo. Ct. App. 1993) (auto exclusion in commercial general liability policy found unambiguous); Shelter Mutual Insurance Co. v. Politte, 663 S.W.2d 777, 779 (Mo. Ct. App. 1983) (auto exclusion in homeowner's insurance policy); cf. Northland Insurance Cos. v. Russo, 929 S.W.2d 930, 934 (Mo. Ct. App. 1996) (holding two exclusions in commercial general liability policy were ambiguous because coverage provided in one section was "taken away" in another section); American States Insurance Co. v. Porterfield, 844 S.W.2d 13, 14-16 (Mo. Ct. App. 1992) (holding claim for injuries arising out of use of truck and not from negligent supervision excluded from coverage by auto exclusion in commercial general liability policy; no claim that language in policy was ambiguous or unclear).

Contrary to appellants' arguments, the facts upon which liability is claimed or denied are not disputed. Compare Johnson v. Fidelity & Casualty Co., 238 F.2d at 323 (disputed factual issues as to ownership of car and whether or not car was furnished for regular use to insured and his wife). Here, it was undisputed that the accident occurred on a public highway and not on or next to Timberland's premises. It was also undisputed that the dump truck was used primarily to move sawdust from place to place. We hold the policy is not ambiguous. First, we cannot agree that a reasonable interpretation of the definition of "mobile equipment" in subdivision (b) as "vehicles maintained for use solely on or next to premises you own or rent" would include use on a public highway. The plain meaning of that definition restricts "use" to a certain territory, that is, on or next to premises owned or rented by the insured. See Frontier Insurance Co. v. Pinecrest Preparatory School, Inc., 658 So. 2d 601, 603 (Fla. Ct. App. 1995) (definition of "mobile equipment" as "vehicles maintained for use solely on or

next to premises you own or rent" held ambiguous when applied to "vehicle" made of truck rarely taken off premises and trailer never taken off premises; child fell off trailer); Doty v. Safeco Insurance Co., 400 So. 2d 718, 723 (La. Ct. App. 1981) (definition of "mobile equipment" as vehicles "maintained for use exclusively on premises owned by or rented to the named insured" restricted "use" to a certain territory).

Nor can we agree that a reasonable interpretation of the term "maintained for use" refers to the insured's intended use of the vehicle, that is, that the dump truck is mobile equipment because Timberland intended to use it solely on or next to its premises. This argument would have more force had the definition omitted the words "for use." The court in Doty v. Safeco Insurance Co. found significant the omission of the word "use" from a definition of "mobile equipment" as vehicles "designed or maintained for the sole purpose of affording mobility" to certain types of equipment. In that case, a pickup truck, which had welding equipment bolted to its bed used in connection with a welding business, was involved in an accident while being driven by the business owner's son who was returning home from a dance hall. The commercial general liability insurer argued that the truck was not designed or maintained for the sole purpose of affording mobility to the welding equipment within the meaning of the definition of "mobile equipment" and was therefore excluded from coverage under the auto exclusion. The court differentiated "use" from "purpose" and concluded that omission of the word "use" from the definition clearly indicated that personal use of the truck was not relevant in determining whether the truck was mobile equipment, that is, designed (structurally suited) or maintained (functionally suited) for the sole purpose (not use) of affording mobility to the welding equipment. See 400 So. 2d at 723 (concluding the insured's sole purpose (goal or aim) for maintaining the truck was to provide mobility to the welding equipment even though the truck was also used for personal transportation); see also Williams v. Galliano, 601 So. 2d 769, 774 (La. Ct. App. 1992) (holding garbage truck was not mobile equipment under similar definition because it was designed or maintained for sole purpose of providing mobility to certain

-15-

equipment; truck also used to transport containers to and from dump, a function which was not incidental or remote). In any event, the evidence showed that Timberland neither maintained, that is, preserved or kept in repair, the dump truck for use nor intended to use the dump truck solely on or next to its premises.

We also cannot agree that a reasonable interpretation of the term "transportation" in the definition of "mobile equipment" in subdivision (f) means long-distance carriage only. The plain meaning of the term "transportation" is not limited to carrying persons or cargo over long distances. Here, it was not disputed that the dump truck was maintained primarily to move sawdust from one place to another and thus was not "maintained primarily for purposes other than the transportation of persons or cargo" within the definition of "mobile equipment" in subdivision (f).

In sum, we hold the district court erred in declaring the jury advisory because the action was triable of right by a jury, but we hold the error was harmless. We also hold the district court did not err in holding, as a matter of law, that the dump truck was not "mobile equipment" under the terms of the policy and thus was excluded from coverage under the auto exclusion. Accordingly, we affirm the judgment of the district court.

HANSEN, Circuit Judge, concurring.

I concur in the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.